■ JULIE CARTER et al., Appellants, v PHYLLIS ANDRIANI et al., Respondents. — Order, Supreme Court, New York County (Blangiardo, J.), entered May 22, 1980, denying plaintiffs' cross motion to add five plaintiffs to the action and granting defendant's motion to dismiss for failure to state a cause of action, reversed, on the law, motion to dismiss denied and cross motion granted, without costs. When viewed as a whole, and assuming the truth of the facts pleaded for the purposes of the motion, we find the allegations of this complaint to sufficiently state a cause of action for the intentional infliction of severe emotional distress. " '[W]here severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation, a remedy is available in the form of an action for the intentional infliction of emotional distress' " *(Long v Beneficial Fin. Co. of N. Y.,* 39 AD2d 11, 13, quoting *Nader v General Motors Corp.,* 25 NY2d 560, 569). Here, the allegations taken together have shown a "planned program of harassment or threats" *(Nestlerode v Federal Ins. Co.,* 66 AD2d 504, 507) with outrageous actions and a deliberate, continuous course of conduct on the part of the defendants and resulting emotional upset, proof of which will be best left for trial. Concur — Sandler, Sullivan and Carro, JJ.; Kupferman, J. P., and Ross, J., dissent in separate memoranda as follows.

Kupferman, J. P. (dissenting). I would affirm. This dissent is not in contention with the philosophy of the majority opinion, but only with respect to the means adopted. This is a suit by 12 tenants setting forth a number of causes of action with allegations of harassment by their landlord. They seek also to add five former tenants as plaintiffs. If only individual rights were sought to be protected, then I could concur with the majority, but in this case the tenants are all arrayed against the landlord in mutual recriminations. The modern love-hate relationship between landlord and tenant in New York City has spawned the Housing Court for this situation. In his 1981 Report on New State Laws Affecting Consumer Protection, Assistant Attorney-General of New York Stephen Mindell summarized legislation adopted during the regular legislative session in 1981. (NYLJ, Aug. 11, 1981, p 1, col 2.) In the general area of the landlord-tenant controversy is the following: "Evictions. The purpose of L. 1981, ch. 467 is to amend Sections 713(10) and 853 of the real property actions and proceedings law in relation to forcible entry and detainer. The law takes effect immediately. The law amends Sections 713(10) and 853 of the RPAPL to expand the grounds upon which a summary proceeding to recover possession of property or a treble damages action for forcible entry or detainer may be brought. The law adds the words 'unlawful means' to the respective statutes. One of the elements to allege and prove under the cited statutes is that the person in possession of the premises involved entered by

force. See, Rasch, Landlord and Tenant Section 1160. The obvious purpose of prohibiting eviction of a tenant by force is to prevent landlords from taking the law into their own hands and breaching the peace. A similar policy, for example, governs self-help repossession under Article 9 of the U.C.C. Recent caselaw has interpreted the requirement of force as physical means rather than exclusively physical force. Cases rejecting a solely literal interpretation of the element of force include *Karin Wassberg v. Orwell, Management,* NYLJ Dec. 17, 1979 (App. Term, First Dept.) dealing with a change of locks and *Yates v. Kaplan,* 75 Misc. 2d 259 (1973) dealing with padlocking of the door. The instant amendment confirms this recent line of judicial interpretation which rejects a narrow legal definition of force." If the Legislature were prepared to deal with the situation outside of the Housing Court, they could have enacted additional legislation to cover it. The Housing Court Act of 1972 (CCA, § 110; L 1972, ch 982, § 2) was to accomplish two major objectives. The first was to create a comprehensive forum for the adjudication of all matters relating to housing standards, and the second being to provide a new method of enforcement and prevention of code violations. Specifically, the Legislature provided that hearing officers, knowledgeable about housing violations and remedial solutions, are to deal with the often emotionally charged issues raised. (CCA, § 110, subds [e], [f].) The sweeping grant of remedial powers coupled with the liberal joinder provisions, is designed to give the Housing Court the flexibility it needs to be effective. Subsection (d) provides in part that "on the application of any party, any city department or the court, on its own motion [the court], may join any other person or city department as a party in order to effectuate proper housing maintenance standards and to promote the public interest." (CCA, § 110, subd [d].) The power of the rent commissioner to impose civil fines on landlords for the harassment of tenants has a statutory basis, subdivision d of section Y51-10.0 of the New York City Administrative Code, and recognition by the Court of Appeals *(Matter of Felin Assoc. v Altman,* 34 NY2d 895, affg without opn 41 AD2d 825). (Cf. *Matter of Belnord Holding Corp. v Joy,* 73 AD2d 549, 550.) It seems clear that the Housing Court is best able to deal with allegations of harassment, especially in view of the number of tenants involved.

Ross, J. (dissenting). In this landlord-tenant action, the 16 named tenants assert 12 causes of action against their landlord. A majority of this court holds that the complaint asserts a cause of action for the intentional infliction of severe emotional distress. A reading of the complaint leads me to conclude otherwise. These pleadings are fatally flawed in that they fail to allege conduct so outrageous or atrocious as to transcend all bounds of decency. The rule has been stated: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress" (Restatement, Torts 2d, § 46, subd [1]). Liability will only attach where the complained of actions are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious" (see comment *d).* (See, also, *Fischer v Maloney,* 43 NY2d 553.) The complaint now before this court merely contains vague and general allegations of a course of conduct engaged in by the defendants. There is no delineation of that type of severe conduct which forms the predicate for liability. Since this element is lacking the plaintiffs should be afforded the opportunity to replead their cause of action, if so desired. Accordingly, I would affirm the order appealed from without prejudice to plaintiffs' repleading their cause of action.