Staci **BONNER,** Plaintiff,

v.

Robert **GUCCIONE,** Jr., Individually and as Publisher and Editor of Spin Magazine, Spin Magazine, Camouflage Associates, Camouflage Publishing, Inc., Camouflage Publishing, Inc., d/b/a Spin Magazine, Stephen C. Swid Corp., and SCS Communications, Inc., Defendants.

**No. 94 Civ. 7735 (DLC).**

United States District Court, S.D. New York.

Jan. 19, 1996.

Hillary Richard, Laurie Edelstein, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, for Plaintiff.

Bettina B. Plevan, Proskauer, Rose, Goetz & Mendelsohn, L.L.P., New York City, for Defendants.

## OPINION

COTE, District Judge:

Plaintiff's suit, which was filed on October 25, 1994, arises under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.*, the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d), the New York State Human Rights Law, Executive Law § 296(1)(a), and the common law of the State of New York. On March 24, 1995, this Court dismissed, with leave to replead, plain-

tiff's claim for intentional infliction of emotional distress, because plaintiff had failed to plead specific acts that would bring her claim within the statute of limitations. Plaintiff subsequently filed an amended complaint, and defendants have moved once more to dismiss her claim for intentional infliction of emotional distress, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. Additionally, the Court is asked to decide whether, in light of the Second Circuit's recent Opinion in *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995), it must dismiss the complaint against Robert Guccione, Jr., as to Counts I through IV of the First Amendment Complaint.[1] For the reasons set forth below, defendants' motion to dismiss the claim for intentional infliction of emotional distress is denied, and its motion to dismiss the Title VII claims against Guccione is granted.

## STANDARD

The Court may dismiss an action pursuant to Rule 12(b)(6), Fed.R.Civ.P., only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In considering the motion, the Court must take "as true the facts alleged in the complaint and draw [ ] all reasonable inferences in the plaintiff's favor." *Jackson National Life Insurance Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir. 1994). The Court can dismiss the claim only if, assuming all facts alleged to be true, plaintiff still fails to plead the basic elements of a cause of action.

## BACKGROUND

The plaintiff began to work at *Spin* as an editorial intern during the summer of 1987, and she continued to work as a freelance writer from the Fall of 1988 until February 1990. From February 1990 to May 1990, the plaintiff worked at *Spin* as an Editorial Assistant; she began to work full-time at *Spin*

---

**1.** In its March 24 Opinion, the Court reserved decision on this issue.

as a Research Editor in May 1990 and as a member of the full-time editorial board from July 1990 until her resignation on November 24, 1993.

Taking the facts alleged in the complaint as true, the plaintiff claims that the defendants maintained a continuing and intentional policy of verbal and physical sexual harassment of female staff. More specifically, she alleges that Guccione, who is the publisher and editor of *Spin,* and other senior and supervisory staff engaged in inappropriate sexual behavior toward female staff by uttering inappropriate sexual comments. Plaintiff claims that a senior staff member no longer employed by *Spin* repeatedly and inappropriately touched her. The pervasiveness of this behavior against female staff, the plaintiff claims, created a hostile work environment that unreasonably interfered with her job performance.

In addition, the plaintiff alleges that the defendants maintained and engaged in a practice of sexual favoritism, because the plaintiff and other female staff at *Spin* were denied job benefits that otherwise would have been granted had they submitted to sexual advances by Guccione and other senior male editors. According to the plaintiff, this practice of sexual favoritism contributed to the presence of a hostile work environment.

The plaintiff also alleges that the defendants maintained an intentional policy and practice of gender discrimination in the form of disparate treatment in the distribution of assignments, promotions, and other employment-related benefits, including compensation and wages. The plaintiff alleges that she was paid less than men in comparable jobs; she also claims that she was paid less than men with fewer responsibilities and duties than herself. Additionally, the plaintiff alleges that the disparate treatment also was based on the willingness of female staff to submit to or ignore the sexual advances of male staff. On the basis of all of the above, the plaintiff claims that she was forced to resign her employment at *Spin.*

## DISCUSSION

### A. Intentional Infliction of Emotional Distress Claim

Plaintiff's action for intentional infliction of emotional distress is subject to a one-year statute of limitations under CPLR § 215. Plaintiff's original complaint was filed on October 25, 1994, but it failed to allege any conduct between October 25, 1993, and November 24, 1993, the date of plaintiff's resignation, that would give rise to a claim of intentional infliction of emotional distress. *See Bonner v. Guccione,* 1995 WL 442102, at *2 (S.D.N.Y. Mar. 24, 1995). Accordingly, this Court dismissed the claim but gave leave to amend the complaint with the following direction: to "identify specific acts within that last month [of plaintiff's employment] which reflect those continuing policies and practice" of sex discrimination that were alleged in the period outside the statute of limitations. *Id.*

> The test to decide whether or not this suit falls within or without the statute of limitations is whether or not there was any conduct during the period within the statute that when combined with other conduct would have contributed to the emotional distress; in brief, a last event rule.

*Id.*

Defendants' motion to dismiss has two prongs. First, defendants argue that plaintiff has alleged no conduct within the statute of limitations period that in and of itself is actionable. Second, defendants contend that the continuing tort doctrine should not be applied to revive what, in their view, is a time-barred claim for intentional infliction of emotional distress. Plaintiff argues—and defendants deny—that this Court's March 24, 1995, decision adopted the continuing tort doctrine and is the law of the case. In essence, the questions to be decided on this issue are twofold: First, whether New York's one-year statute of limitations precludes consideration of conduct outside the limitations period in deciding whether a claim for intentional infliction of emotional distress has been made. Second, whether plaintiff's action for intentional infliction of emotional distress states a claim upon which relief can be granted.

Defendants' first prong essentially invites the Court's reconsideration of its March 24, 1995, ruling. Under the law of the case doctrine, because the Court "decide[d] upon a rule of law, [that rule] should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir.1991). The Court should not revisit a previous ruling absent " 'extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.' " *North River Insurance Company v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (internal quotations omitted). Nevertheless, since the Court did not elaborate on the basis for its March 24 ruling, it is appropriate to discuss here the Court's analysis of the statute of limitations issue.

New York's highest court has not yet spoken on the issue of whether only conduct within the limitations period may be considered to decide whether a claim for intentional infliction of emotional distress has been timely made. In order to attempt to discern how that Court will decide the issue, the Court gives weight to published decisions by the Appellate Division. *Gasperini v. Center for Humanities, Inc.*, 66 F.3d 427, 430 (2d Cir. 1995). The decisions of the Appellate Division are split, however, on this issue. In *Foley v. Mobil Chemical Company*, 214 A.D.2d 1003, 626 N.Y.S.2d 906 (4th Dep't. 1995), the plaintiff alleged that defendants sexually harassed and discriminated against her. The Court rejected plaintiff's "continuing wrong" theory, which argued that "if any of the alleged intentional acts occurred within the period of limitations, prior acts are not time barred." *Foley*, 626 N.Y.S.2d at 907. The Court held that a cause of action for intentional infliction of emotional distress is solely limited to that conduct which occurred within the one-year period immediately preceding the commencement of the action; it

subsequently found that the conduct within the year of filing was "wholly inappropriate" but not sufficiently outrageous to constitute a tort, and it ordered that the claim be dismissed. *Id.*, 626 N.Y.S.2d at 907–08. *See also Spitzer v. Shanley Corporation*, 151 F.R.D. 264 (S.D.N.Y.1993); *Koster v. Chase Manhattan Bank, N.A.*, 609 F.Supp. 1191, 1198 (S.D.N.Y.1985); *Weisman v. Weisman*, 108 A.D.2d 853, 485 N.Y.S.2d 570 (2d Dep't. 1985). The *Foley* Court relied on *Marshall v. Nelson Electric*, 766 F.Supp. 1018, 1032 (N.D.Okl.1991), *aff'd*, 999 F.2d 547 (10th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 921, 127 L.Ed.2d 215 (1994), which, after surveying the case law in the various Circuits, construed Oklahoma law and reasoned that to consider conduct beyond the statute of limitations

> would subject defendants to never-ending liability for such claims, which could at any time be triggered by non-extreme, non-outrageous, and non-tortious acts. Merely alleging that such non-actionable conduct was an extension of actionable conduct would resurrect stale time-barred conduct. Such a result would be fundamentally foreign to the purpose of statutes of limitations.

*Id.* at 1032.

On the other hand, in another recent opinion only a few months before the *Foley* decision, the same Department of the Appellate Division appears to have ruled the opposite way. In *Drury v. Tucker*, 210 A.D.2d 891, 621 N.Y.S.2d 822 (4th Dep't.1994), the Court held that plaintiff's action for intentional infliction of emotional distress was not barred by the statute of limitations, "because plaintiff sufficiently set forth concrete factual allegations of a continuing course of conduct that terminated within one year of plaintiff's commencing this action." *Id.*, 621 N.Y.S.2d at 823. Unlike in *Foley*, the Court considered conduct beyond the limitations period in finding that the plaintiff stated a claim for intentional infliction of emotional distress.[2]

---

2. The Court cited to the Appellate Division's decision in *Misek–Falkoff v. Intern. Business Mach.*, 162 A.D.2d 211, 556 N.Y.S.2d 331, 331 (1st Dep't.), *app. denied*, 76 N.Y.2d 708, 560 N.Y.S.2d 990, 561 N.E.2d 890 (1990), in which the Court wrote:

> Absent concrete factual allegations of a ... concerted course of action against the plaintiff, we need not reach the issue of whether, if

██ Finding authority in the Appellate Division in conflict on the statute of limitations issue, I turn for guidance to a general discussion of the tort under New York law. Although originally not recognized in New York as a tort, in order to compensate deserving victims of egregious conduct, the courts allowed recovery under other theories, including breach of contract. *Howell v. New York Post Company, Inc.*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 352, 612 N.E.2d 699, 701 (1993). Following Professor Prosser's urging that the courts adopt a theory of tort recovery and avoid subterfuges, the New York courts did so in the 1970's. The elements of the cause of action are (1) extreme and outrageous conduct; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) an injury caused by the conduct; and (4) severe emotional distress. *Id.*, 596 N.Y.S.2d at 353, 612 N.E.2d at 701. After briefly summarizing the development of the tort, the New York Court of Appeals in *Howell* explained that

> [u]nlike other intentional torts, intentional infliction of emotional distress does not proscribe specific conduct (compare, e.g., Restatement [Second] of Torts § 18 [battery]; id., § 35 [false imprisonment]), but imposes liability based on after-the-fact judgments about the actor's behavior. Accordingly, the broadly defined standard of liability is both a virtue and a vice. The tort is as limitless as the human capacity for cruelty.

*Id.* (brackets in original). A cause of action for intentional infliction of emotional distress must allege conduct

> "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (N.Y.1983) (quoting *Restatement (Second) of Torts*, § 46 cmt. d (1965)).

██ There is no question that in New York "sexual harassment can give rise to a claim for intentional infliction of emotional distress." *Collins v. Willcox Incorporated*, 158 Misc.2d 54, 600 N.Y.S.2d 884, 885 (Sup. Ct.1992); *see also Polley v. Federal Reserve Bank of New York*, 1994 WL 465923, at *6 (S.D.N.Y. Aug. 23, 1994) (citing *Collins*); *O'Reilly v. Executone of Albany, Inc.*, 121 A.D.2d 772, 503 N.Y.S.2d 185 (3d Dep't.1986). Since the tort does not proscribe specific conduct, like battery or false imprisonment, but imposes liability based on after-the-fact judgments about a tortfeasor's behavior, including a course of conduct, *see Carter v. Andriani*, 84 A.D.2d 513, 443 N.Y.S.2d 157, 158 (1st Dep't.1981), it is not appropriate to limit the fact-finder's perspective to only the final instances of such conduct and exclude consideration of those acts which may be critical to defining the character of the conduct but which may nonetheless fall outside the one year prior to the lawsuit.[3] In the case of sexual harassment, New York courts

properly pleaded, the acts more remote in time [*i.e.*, outside the limitations period] could be considered actionable as part of a "continuing" tort.
The *Drury* Court specifically found that the plaintiff had satisfied the requirement of concrete factual allegations of a continuing course of conduct terminating within the limitations period. Therefore, it appears that the *Drury* Court adopted a "continuing" tort theory, in which conduct beyond the limitations period was considered in deciding whether or not a claim for intentional infliction of emotional distress was made.

3. The tort of intentional infliction of emotional distress is different in character from other torts which reflect continuous wrongs. For example, in the case of trespass and nuisance, a cause of action accrues for each wrong (*i.e.*, unlawful

"entry") and accrual is not limited to the first day that the tort was committed. *See Sova v. Glasier*, 192 A.D.2d 1069, 596 N.Y.S.2d 228, 229 (4th Dep't.1993). Each act of unlawful entry—unlike each act of harassment or discrimination, which only reaches an actionable level when aggregated—is itself actionable. For torts like false imprisonment, the tort becomes "complete," for accrual purposes, only at the end of the unlawful restraint. *See Karen v. New York*, 111 Misc.2d 396, 444 N.Y.S.2d 381, 384 (Ct.Cl. 1981). As a final example, in the case of medical malpractice, there is a "continuous treatment" tolling exception which allows suit to be brought at the end of treatment by the physician who committed the malpractice. *See McDermott v. Torre*, 56 N.Y.2d 399, 452 N.Y.S.2d 351, 355, 437 N.E.2d 1108, 1112 (1982).

have recognized that it is the continuous nature of the conduct that may make it so outrageous and extreme as to be actionable. As the Court in *Collins* explained,

> Although each individual act ... [may not be] actionable, ... when aggregated over time, the continuous nature of the conduct may make it sufficiently outrageous that a jury could reasonably find in [plaintiff's] favor on the emotional distress allegation.

*Collins*, 600 N.Y.S.2d at 886; *Bonner*, 1995 WL 442102, at *2. In *Collins*, the plaintiff, who was a married woman, alleged she was subjected to repeated advances of a sexual nature, including unwanted touching, and she was terminated because of her resistance. *Id.*, 600 N.Y.S.2d at 885–86.

▌ As the Second Circuit noted in discussing the continuing violation theory as it applies to Title VII cases,

> While discrete incidents of discrimination that are not related to discriminatory policies or mechanisms may not amount to a continuing violation, ... a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.

*Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994). In addition, the conduct that falls within the limitations period must be in and of itself actionable conduct and not merely the effect of prior tortious conduct. *Cf. Delaware State College v. Ricks*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 503–05, 66 L.Ed.2d 431 (1980).[4] Thus, where a plaintiff is the target of "a planned program of harassment or threats," accompanied by "vindictiveness, taunting or derision," *Nestlerode v. Federal Insurance Company*, 66 A.D.2d 504, 414 N.Y.S.2d 398, 400 (4th Dep't.), *app. denied*, 48 N.Y.2d 604, 421 N.Y.S.2d 1029, 396 N.E.2d 487 (1979), and this course of conduct

falls within the limitations period, a cause of action for intentional infliction of emotional distress that includes the entire course of conduct may be established.[5]

Having explained the Court's March 24 ruling, I now examine whether the conduct alleged states a claim for intentional infliction of emotional distress. The plaintiff filed suit on October 25, 1994; thus, to be timely, the actionable conduct must include behavior following October 25, 1993. In her amended complaint, the plaintiff alleges that in early November 1993, Mark Blackwell, a senior editor and one of the staff members at *Spin*, treated plaintiff abusively. According to Bonner, while she was fact-checking a copy of the January 1994 issue, she had to ask Blackwell a question about an item in one of his columns. Blackwell's response was to say, "Just get the names spelled right and don't mess with any of my jokes just because you don't understand them." He continued, "I know you don't understand jokes sometimes[,] especially the smart ones." He also added, "You don't know what the hell you're talking about, just do your job and don't go changing any of my jokes and making them not funny." This alleged conduct is consistent with Bonner's allegations of Blackwell's conduct on previous occasions, where he referred to Bonner (and other female staff) as "incompetent," "weird," "stupid," "fucking crazy," and "idiot[s]." He also characterized articles written by women, including Bonner, as "piece[s] of shit." On one occasion, Blackwell directly insulted Bonner's writing in front of other staff members, by telling them that "she can't write for shit." According to the plaintiff, Blackwell did not refer to male staff members in a like manner.

In addition, plaintiff's amended complaint alleges that in November 1993 she was excluded from participating in the publication of a special January 1994 year-end issue. Plaintiff alleges that her male assistant was asked to contribute to the issue and that

---

4. Courts have been receptive to the idea of applying the "continuing violation" theory to intentional torts. *See Fusco v. Perry*, 1995 WL 65067, at *4 (N.D.N.Y. Feb. 9, 1995) (assault and battery); *Cahill v. Northeast Savings, F.A.*, 1993 WL 313633, at *9 (N.D.N.Y. Aug. 16, 1993) (intentional infliction of emotional distress).

5. This result does not run afoul of the purposes of the time bar—to provide repose—because there is no cause of action unless the conduct continues into the period of the statute of limitations.

male staff members in comparable positions to plaintiff had contributed to similar special issues of *Spin* in the past. This allegation is consistent with other alleged instances in which Bonner was excluded from participating in special issues of *Spin,* such as the special college issue and an issue on "the soul of rock and roll" in November 1990 and May 1991, respectively. More generally, Bonner's claim is consistent with other instances in which she allegedly was subjected to a continuing policy and practice of limiting the opportunities of female employees for professional advancement in the magazine. However, because Bonner was excluded from attending editorial staff meetings in December 1992 and told that she could no longer write for the magazine in January 1993, Bonner's exclusion from the 1994 year-end special issue would merely allege the effect of prior tortious conduct. Moreover, this kind of allegation has not generally been sufficient to state a claim for intentional infliction of emotional distress. *See Dirschel v. Speck,* 1994 WL 330262, at *9 (S.D.N.Y. July 8, 1994) (allegations that plaintiff who was excluded from meetings, unable to meet with CEO, not consulted on relevant matters, and generally subjected to disrespect, failed to state claim for intentional infliction of emotional distress). Therefore, plaintiff's allegation of exclusion from participating in the publication of the special 1994 year-end issue will not be considered as part of the continuing course of conduct that contributed to plaintiff's emotional distress.

Finally, the plaintiff alleges that in early November 1993, Blackwell interrupted a conversation she was having with a female freelance fact-checker, tore an article out of her hands, and said, " 'Let's talk about something really important, what stupid shit are you talking about now.' " According to Bonner, Blackwell then shoved himself between her and the freelancer, stood with his back to her, and flirtatiously introduced himself to the freelancer. This is consistent with plaintiff's allegation that a policy of sexual favoritism existed at *Spin.* It is also evidence of Blackwell's harassing and demeaning conduct toward the plaintiff.

Plaintiff has alleged that defendants intentionally caused her extreme emotional distress by "creating an intimidating, hostile, abusive, and offensive work environment." In her Amended Complaint, the plaintiff has identified specific acts within that last month of her employment which reflect those continuing policies and practices of harassing and abusive behavior toward Bonner and other women staff members of *Spin.* The acts alleged are not, as defendants assert, simply "example[s] of unpleasant treatment during the limitations period," devoid of any similarity with previous instances of misconduct. To the contrary, taking (as this Court must) the allegations in the complaint as true, the plaintiff has plead a course of harassing, intimidating, and demeaning conduct (in the form of verbal abuse) toward Bonner the last event of which fell within the limitations period. Therefore, her claim is not barred by the statute of limitations. Further, considering not only those events that occurred within a year of this litigation but also those events that were part of the same uninterrupted course of conduct but which came before, I conclude that the plaintiff has stated a cause of action for intentional infliction of emotional distress.

## B. Title VII Claims Against Guccione in his Official Capacity

In *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995), the Second Circuit held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Id.* at 1313. The plaintiff correctly argues that the *Tomka* decision did not decide whether a supervisory employee may be sued in his or her "official" capacity. *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 n. 2 (2d Cir.1995) ("The issue of whether such an individual may be made a party defendant solely in the person's corporate capacity as an agent of the employer ... was neither argued to, nor addressed by, the *Tomka* court.") (citing *Coraggio,* 1995 WL 242047, at *8 (S.D.N.Y. Apr. 26, 1995)). This issue remains undecided by the Second Circuit. *Id.* In *Coraggio,* which was decided before *Tomka,* the District Court held that, although persons cannot be held liable in their individual capacities under

Title VII, such persons "can be named as defendants in their representative or official capacities." *Coraggio*, 1995 WL 242047, at *7. According to the District Court, "It is not anomalous to permit individuals to be named as defendants, even though no judgment can be collected from them." *Id.* As parties to the law suit, such individuals must comply with their discovery obligations under the Federal Rules of Civil Procedure. Thus, the District Court reasoned, enabling a plaintiff to sue an individual in his or her official capacity facilitates discovery. In addition, "an employer-only approach," wrote the Court, "is both under-inclusive and over-inclusive," because

> if only employers could be named as Title VII defendants, those employees who allegedly committed discriminatory acts would escape public accountability, while those who played no part in the purported discrimination are unnecessarily stigmatized.... By contrast, naming individuals as defendants identifies the alleged wrongdoers, forcing them to answer for their acts publicly, even if they do not have to answer for them financially.

*Id.*

■■■ This Court, however, does not believe that Title VII authorizes a private right of action against a supervisory employee in his or her official capacity. "The 'ultimate issue is whether Congress intended to create a private cause of action.'" *Karahalios v. National Federation of Federal Employees*, 489 U.S. 527, 532, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989) (quoting *California v. Sierra Club*, 451 U.S. 287, 293, 101 S.Ct. 1775, 1778, 68 L.Ed.2d 101 (1981)). Where a statute expressly provides a remedy, "courts must be especially reluctant to provide additional remedies." *Id.*, 489 U.S. at 533, 109 S.Ct. at 1287. This is so because " '[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.'" *Id.* (quoting *Middlesex County Sewerage Authority v. Sea Clammers*, 453 U.S. 1, 15, 101 S.Ct. 2615, 2624, 69 L.Ed.2d 435 (1981)). The Court can find no evidence of Congressional intent to support the *Coraggio* Court's

holding; in fact, the *Tomka* decision militates against the crafting of a private action against employees acting in their "official" capacity. As the District Court in *Bakal v. Ambassador Construction* put it, the problem with the holding in *Coraggio*, especially in the light of the *Tomka* decision, is that

> [t]he function of the courts ... is to provide a remedy against those that Congress has determined should be held liable for the plaintiff's damages, not to affix moral blame. If Congress has made a determination that individual employees should not be personally liable for acts of discrimination, it is not for the courts to second guess that judgment and provide some type of moral sanction against those who engaged in prohibited conduct.

*Bakal*, 1995 WL 447784, at *3 (S.D.N.Y. July 28, 1995). *See also Yaba v. Cadwalader, Wickersham & Taft*, 896 F.Supp. 352, 354 n. 1 (S.D.N.Y.1995) (no "official" capacity Title VII liability, because "Congress has not authorized it"). In conclusion, "The courts cannot create their own causes of action or make individuals defend claims for which they are not liable." *Id.* Because Guccione cannot be held liable either in his official or individual capacity under Title VII, Counts I through IV of the Amended Complaint must be dismissed against him.

## CONCLUSION

Defendants' motion to dismiss the plaintiff's claim for intentional infliction of emotional distress is denied. The claims against Robert Guccione, Jr., in Counts I through IV of the Amended Complaint are dismissed.

SO ORDERED: