Eddie GRAY, Plaintiff,

v.

SHEARSON LEHMAN BROTHERS,
INC., Rolfe Wetjen, John Cienki
and Robert Utter, Defendants.

No. 96 Civ. 1701 (BMB).

United States District Court,
S.D. New York.

Dec. 9, 1996.

Gregory R. Milne, Cassidy, Foss & San Filippo, Red Bank, NJ, for plaintiff.

Kevin B. Leblang, Izabel P. McDonald, Yehudis Lewis, Kramer, Levin, Naftalis & Frankel, New York City.

## OPINION AND ORDER

MUKASEY, District Judge.

Eddie Gray sues Shearson Lehman Brothers, Inc., and Rolfe Wetjen, John Cienki and Robert Utter "the individual defendants", for employment discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, New York Executive Law § 296(1)(a), and New York City Human Rights Law § 8–107(1)(a). Plaintiff also sues for unlawful termination in violation of what is referred to as New York's whistleblower statute. N.Y.Lab.Law § 740 (McKinney 1988). Defendants move to dismiss portions of the Title VII claims against Shearson as time-barred, and the Title VII claims against the individual defendants for failure to state a claim for relief. Defendants move also to dismiss plaintiff's claims under the Whistleblower's statute and the New York City Human Rights Law in their entirety. For the reasons stated below, defendants' motions are granted.

## I.

The following facts are taken from plaintiff's amended complaint and are presumed true for purposes of this motion: Eddie Gray is a 51–year–old black man and was employed by Shearson as the Assistant Vice President in charge of Fulfillment Services. (Compl. ¶¶ 1, 3) Wetjen is white and was the Senior Vice President at Shearson responsible for transfers. (*Id.* ¶ 3) Cienki, also white, was a Vice President at Shearson and plaintiff's supervisor in 1991. (*Id.* ¶ 4) Utter, also white, was a Vice President at Shearson and plaintiff's supervisor in 1992. It is not clear from the complaint whether Shearson is a New York corporation; however, plaintiff alleges that Shearson employed more than 15 employees and was engaged in industry affecting commerce. (*Id.* ¶ 2)

Plaintiff alleges three discriminatory acts. First, plaintiff claims that sometime in 1987, Wetjen told him that his position at that time did not require a manager at the level of Vice President. However, plaintiff states that he was later replaced by two different managers who had the title and salary of a full Vice President. (Compl. Count One ¶ 5) Second, plaintiff claims that in 1989 he was promoted to Assistant Vice President without receiving the customary and commensurate raise. (*Id.* ¶ 6) Finally, plaintiff claims that he was fired in 1992 for reporting an illegal kickback scheme involving a temporary personnel services contractor. Plaintiff states that he told Wetjen that he had received a proposal about the scheme, and that Wetjen told him to hold a meeting and accept the money under the supervision of Utter, then head of Security for Shearson, and to do nothing further. It is unclear from the complaint whether plaintiff participated in the scheme as directed or not. However, the scheme eventually was uncovered and the contractor

prosecuted for violation of federal racketeering laws. Utter lost his job as head of Security and Wetjen assigned him to supervise plaintiff. Plaintiff was fired on or about June 30, 1992. (Compl. Count 4 ¶¶ 2–8)

Plaintiff filed a charge with the New York State Division of Human Rights ("DHR") on September 15, 1992. (Leblang Aff., Ex. B; Pl.Mem., Ex. C) Also, plaintiff states that he filed a charge with the Equal Employment Opportunity Commission ("EEOC") and that both federal and state agencies have issued notices of right to sue. (Compl. Count 1 ¶ 9) Plaintiff filed suit on March 8, 1996.

## II.

Defendants move first to dismiss the plaintiff's 1987 and 1989 Title VII claims as time-barred because plaintiff failed to file a charge within 240 days of the alleged discriminatory acts. The general time limitation for EEOC filings is 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1) (1994). However, if the discrimination took place in a state with an agency authorized to grant or seek relief from discrimination, and the complainant has filed a charge with that agency, that time limitation is extended to 300 days. *Id.* In a state with its own agency, no charge may be filed with the EEOC "before the expiration of 60 days after proceedings have been commenced under State or local law...." 42 U.S.C. § 2000e–5(c). Therefore, in a state with a fair employment practices agency, to file in a timely fashion with the EEOC—within 300 days of the alleged discriminatory practice—a complainant must actually file with the state agency or the EEOC within 240 days of the alleged discriminatory practice. *See Equal Employment Opportunity Commission v. Commercial Office Prods. Co.,* 486 U.S. 107, 121, 108 S.Ct. 1666, 1674, 100 L.Ed.2d 96 (1988) (holding that when a charge is filed with the EEOC in a state with

a fair employment practices agency, the EEOC holds the charge in "suspended animation" until either 60 days have elapsed or the state proceeding is terminated); *see also Mohasco Corp. v. Silver,* 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980).[1]

Plaintiff filed a charge with the DHR on September 15, 1992. Accordingly, only discriminatory acts that occurred in the 240-day period prior to plaintiff's filing—after January 18, 1992—are actionable under Title VII. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996). Here, the only act which is timely is the termination of plaintiff's employment in June 1992. In the absence of any exception to the filing requirement, plaintiff's claims that he was not promoted in 1987 and did not receive a raise in 1989 are barred and must be dismissed. *Id.* at 713.

To avoid dismissal, plaintiff argues that the 1987 and 1989 acts fall within the "continuing violation" exception to the filing requirement. "The continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice [or] where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* Under that exception, if a plaintiff files a charge that is timely as to any incident of discrimination, "all claims of acts of discrimination under that policy will be timely." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994).

Plaintiff does not qualify for the continuing violation exception. He has not claimed that the alleged discrimination stemmed from a discriminatory policy or practice. He also has not demonstrated that

---

1. In *Ford v. Bernard Fineson Dev. Center,* 81 F.3d 304, 309 (2d Cir.1996), the Second Circuit recently held that a charge filed 281 days after the alleged discriminatory act was nevertheless timely filed with the EEOC because a Workshare Agreement in effect between the EEOC and the DHR included an automatic and self-executing waiver of the state's exclusive 60 day period which served to terminate the state proceeding

and thereby meet the 300-day filing period. Here, plaintiff has not presented any evidence that a similar Workshare Agreement was in effect in 1992 when he filed his charge. Whether the time period for filing was 240 days or 300 days makes no difference in this case, because the 1987 and 1989 acts occurred over two years before plaintiff filed his charge.

the three incidents were related. Plaintiff merely argues that "[t]he discharge was the last in a series of racially discriminatory acts against the Plaintiff" and "[f]or years, the Defendant corporation and individuals had subjected the Plaintiff to disparate treatment based on his race." (Pl.Mem. at 4) Specific, unrelated instances of discrimination, even similar ones, that are not the result of a discriminatory policy "do not amount to a continuing violation." *Lambert*, 10 F.3d at 53.

■ Plaintiff argues also that Title VII's filing requirements begin to run when the employee knows or should know of the alleged discriminatory act, and that he did not realize until January of 1992 that race was the motivating factor behind the 1987 and 1989 incidents. (Pl.Mem. at 5) In *Miller v. International Telephone and Telegraph Corp.*, a case involving alleged violations of the Age Discrimination in Employment Act ("ADEA"), the Second Circuit held that the filing time periods "commence upon the employer's commission of the discriminatory act." 755 F.2d 20, 24 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). Those periods are not "tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled [or] was prevented in some extraordinary way from exercising his rights." *Id.* The Court noted that such an extraordinary circumstance might exist "if the employee could show that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory." *Id.; see also Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 49 (2d Cir. 1985). Plaintiff does not claim that he was misled or prevented in any way from exercising his rights. Rather, plaintiff claims that defendants lied to him and that he could not realize defendant's discriminatory motivation until 1992 when he was replaced by white officers who had received salary increases. However, plaintiff's lack of awareness of defendants' intent does not toll the filing period, and the fact that defendants may have provided other reasons for the employment actions does not justify an inference that plaintiff was misled. *See Shapiro v. William*

*Douglas McAdams, Inc.*, No. 94 CV 4424, 1995 WL 313120, at *3 (E.D.N.Y. May 16, 1995). Plaintiff does not claim any extraordinary circumstances which would justify tolling the filing deadline. Accordingly, claims based on discriminatory acts which occurred before January 18, 1992 are barred and dismissed.

### III.

■ Defendant moves next to dismiss the Title VII claims against the individual defendants. In *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995), the Second Circuit held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." However, plaintiff claims that the individual defendants may be sued in their official capacity. Plaintiff relies upon *Coraggio v. Time Inc. Magazine Co.*, No. 94 Civ. 5429, 1995 WL 242047 (S.D.N.Y. April 26, 1995), a pre–*Tomka* decision, in which I held that although persons could not be liable in their individual capacities under Title VII, they could nevertheless be named as defendants in their representative or official capacities. *Id.* at *8.

Plaintiff correctly notes that the Second Circuit has not yet ruled on whether individuals can be named in Title VII suits in their official capacities. In *Cook v. Arrowsmith Shelburne, Inc.*, the Second Circuit stated that: "The issue of whether . . . an individual may be made a party defendant solely in the person's corporate capacity as an agent of the employer—not subject to individual liability but a party for the purpose of discovery— . . . was neither argued to, nor addressed to the *Tomka* court." 69 F.3d 1235, 1241 n. 2 (2d Cir.1995). The issue was not argued to the *Cook* Court, which therefore refused to address it.

In *Coraggio*, I followed the reasoning of the Fifth, Ninth and Eleventh Circuits to hold that persons cannot be liable in their individual capacities under Title VII. However, I took up, perhaps too literally, the suggestion in an Eleventh Circuit case that "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming supervisory employees as

agents of the employer, or by naming the employer directly." 1995 WL 242047, at *8 (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991)). Thus, I found it was permissible to name supervisory employees as defendants and to treat them as such for all purposes except liability. I rejected the view expressed by one of my colleagues that there was nothing to be gained other than "consumption of time and creation of bitterness by inclusion of the individual as a defendant," *Bramesco v. Drug Computer Consultants*, 834 F.Supp. 120, 123 (S.D.N.Y. 1993), and pointed out that there were positive benefits to be achieved by permitting individuals to be named as parties: discovery could be obtained more easily from a party and individual responsibility or vindication could be publicly fixed. 1995 WL 242047, at *8.

Two Courts in this District have agreed with the reasoning in *Coraggio*. *See Abdullajeva v. Club Quarters, Inc.*, No. 96 Civ. 0383, 1996 WL 497029 (S.D.N.Y. Sept. 3, 1996) (citing *Coraggio*); *Kounitz v. Slaatten*, 901 F.Supp. 650, 656 (S.D.N.Y.1995) ("[T]he Court finds persuasive the reasoning in *Coraggio v. Time Inc.* ...."). In addition, at least two Courts have applied the same reasoning to hold persons subject to suit in their official capacities under the ADEA. *See Wray v. Edward Blank Assoc., Inc.*, 924 F.Supp. 498 (S.D.N.Y.1996); *Leykis v. NYP Holdings, Inc.*, 899 F.Supp. 986 (E.D.N.Y. 1995).

However, at least four Courts have disagreed with the reasoning in *Coraggio*. *See Bonner v. Guccione*, 916 F.Supp. 271 (S.D.N.Y.1996); *Davis v. City University of New York*, No. 94 Civ. 7277, 1996 WL 243256 (S.D.N.Y. May 9, 1996); *Bakal v. Ambassador Constr.*, No. 94 Civ. 584, 1995 WL 447784 (S.D.N.Y. July 28, 1995); *Yaba v. Cadwalader, Wickersham & Taft*, 896 F.Supp. 352 (S.D.N.Y.1995). In *Bakal*, Judge Martin noted that "official capacity" suits have "traditionally been permitted to avoid Eleventh Amendment and sovereign immunity problems that might arise if a plaintiff were to sue a government entity directly." Judge Martin concluded that because employers are subject to suit under Title VII, "[t]here is no need for such 'official capacity' litigation." 1995 WL 447784, at *4. In addition, Judge Martin noted that the function of courts is "to provide a remedy against those that Congress has determined should be held liable for the plaintiff's damages, not to affix moral blame." *Id.* Judge Martin continued: "If Congress has made a determination that individual employees should not be personally liable for acts of discrimination, it is not for the courts to second guess that judgment and provide some type of moral sanction against those who engaged in prohibited conduct." *Id.* Finally, Judge Martin correctly noted that a defendant bears financial and emotional expenses in civil litigation and a court should force a person to bear those costs only if "the end of that litigation may result in an award of damages against that person." *Id.*

Upon reflection, I find Judge Martin's reasoning in *Bakal* far more compelling than my own in *Coraggio*. Whatever may have been suggested by the reference in *Busby* to individual capacity suits, the statute itself does not provide for such suits, and they are not necessary to impose liability on the employer; the statute itself does that. No matter what benefits may accrue by permitting official capacity suits, there is nothing to show that Congress intended to permit suits against individuals in their official capacity. *See Bonner*, 916 F.Supp. at 279 (noting that Congress provided the remedy it thought appropriate and in the absence of contrary Congressional intent the *Tomka* decision militates against official capacity suits under Title VII). Accordingly, defendant's motion to dismiss all Title VII claims against the individual defendants is granted.

## IV.

■ Defendants move next to dismiss as time-barred plaintiff's claim under New York's whistleblower statute. That statute prohibits retaliation by an employer against an employee because the employee discloses or threatens a "policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." N.Y.Lab.L.

§ 740(2)(a) (McKinney 1988). Here, plaintiff argues that he was fired for reporting a kick-back scheme which violated federal racketeering laws. Whether plaintiff states a claim for relief under the whistleblower statute or not, plaintiff's claim is time-barred. The statute states that an employee "who has been the subject of a retaliatory personnel action in violation of this section may institute a civil action ... within one year after the alleged retaliatory personnel action was taken." N.Y.Lab.L. § 740(4). Plaintiff was fired in 1992. He did not sue until March, 1996. Accordingly, plaintiff's claim under the statute is barred.

Plaintiff argues that the limitations period under the whistleblower statute should be tolled while his administrative action in the DHR and EEOC was pending. Plaintiff relies upon *Brown v. Bronx Cross County Medical Group*, 834 F.Supp. 105 (S.D.N.Y. 1993), in which the Court held the statute of limitations for a state law emotional distress claim was tolled during the period a charge was pending in the EEOC. However, in *Lamb v. Citibank, N.A.*, No. 93 Civ. 2358, 1994 WL 497275, at *8 (S.D.N.Y. Sept. 12, 1994), I held that the statute of limitations for a state law claim of intentional infliction of emotional distress was not tolled while the plaintiff's Title VII claim was pending in the EEOC. *See also Hall v. USAir, Inc.*, No. 95 Civ. 3944, 1996 WL 228458, at *3 (E.D.N.Y. April 29, 1996) (Weinstein, J.) (finding *Lamb* persuasive). The facts here are even stronger than those in *Lamb*. In *Lamb*, the state law claim was related to the plaintiff's claim of discrimination. Here, plaintiff's claim under the whistleblower statute is based upon a different theory and different facts from his discrimination claims. *See Brown v. Vail–Ballou Press Inc.*, 188 A.D.2d 972, 973, 592 N.Y.S.2d 78, 79 (3d Dep't 1992). Therefore, plaintiff's claim under the whistleblower statute is dismissed as time-barred.

 Finally, defendants move to dismiss plaintiffs claim under the New York City Human Rights Law. Plaintiff has not opposed this motion. The New York City Administrative Code, Title 8, Section 106(1)(a) prohibits discriminatory employment practices. N.Y.C.Admin.Code § 8–107(1)(a).

Section 8–502 permits a private action by persons aggrieved by unlawful discriminatory practices and requires that "prior to commencing a civil action ... the plaintiff shall serve a copy of the complaint upon the city commission on human rights and the corporation counsel." N.Y.C.Admin.Code § 8–502(c). Plaintiff has presented no evidence that he complied with this statutory prerequisite to suit. Accordingly, plaintiff's claim under the New York City Human Rights Law is dismissed. *See Paladines v. Poulos*, No. 93 Civ. 9031, 1994 WL 389022, at *3 (S.D.N.Y. July 22, 1994).

\* \* \*

For the reasons stated above, defendants' motion to dismiss portions of plaintiff's Title VII claim as time-barred is granted; defendants' motion to dismiss all Title VII claims against the individual defendants is granted; defendants' motions to dismiss plaintiff's claims under New York's whistleblower statute and New York City Human Rights Law is granted.

SO ORDERED.