USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2254

 DENNIS J. ABBOTT, III, ET AL.,

 Plaintiffs, Appellants,

 v.

 UNITED STATES OF AMERICA, ET AL.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Gene Carter, U.S. District Judge]
 

 Before

 Lynch, Circuit Judge,
 
 Coffin and Bownes, Senior Circuit Judges.
 

 James G. Noucas, Jr., with whom Christopher W. Keenan and
Noucas & Keenan were on brief, for plaintiffs.
 Deborah Ruth Kant, Attorney, Department of Justice, with whom
Frank W. Hunger, Assistant Attorney General, Jay P. McCloskey,
United States Attorney, and Barbara C. Biddle, Attorney, Department
of Justice, were on brief, for defendant the United States.
 Julia Akins Clark for defendant International Federation of
Professional and Technical Engineers, AFL-CIO & CLC, Local 4.

April 27, 1998

 LYNCH, Circuit Judge. Engineering and technical
employees at the Portsmouth Naval Shipyard felt they were not being
paid overtime to which they were entitled. Their union filed a
grievance and asked the employees specifically to notify the union
if they wished to be part of the grievance. The union also used
language which implied that those employees who did not join this
grievance could later file grievances. A settlement was reached of
the union grievance: from November 12, 1993 forward, each employee
in these categories would receive overtime pay, but only those
individuals who had joined the grievance would receive compensation
for overtime past due and owed up to that date.
 This lawsuit is by those who did not join in the union
grievance, trying to recover past overtime pay for the period up to
November 12, 1993. In 1996, these employees filed suit against
both the United States and the union. The suit proceeds under the
special sets of laws which govern the federal employees at the
Shipyard, and those laws determine the outcome. Congress enacted
a comprehensive remedial scheme for such claims, a scheme which
requires that we affirm the dismissal of the action against the
union; we also affirm dismissal against the United States on
statute of limitations grounds.
 I. Background
 In reviewing the district court's decision to grant the
defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6), we
take all well-pleaded facts in the complaint to be true, but need
not credit the complaint's "bald assertions" or legal conclusions. 
See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir.
1996).
 Plaintiffs are a group of over one hundred present and
former employees at the Portsmouth Naval Shipyard. The United
States Navy owns the Portsmouth Naval Shipyard. Plaintiffs are or
were members of defendant union, the International Federation of
Professional and Technical Engineers, AFL-CIO & CLC, Local 4. The
union is the exclusive bargaining agent for certain professional
and technical federal employees at the Shipyard.
 This saga starts in November of 1985, when the Fair Labor
Standards Act regulations of the United States Office of Personnel
Management became effective. These regulations presumed that
federal employees at the GS-11 level and above were exempt from the
overtime pay provisions of the Fair Labor Standards Act ("FLSA"),
29 U.S.C. 201-19. Under the provisions of FLSA 7(a)(1),
covered employees must be paid one and one-half times their regular
hourly wage if they work more than forty hours in a work week. See29 U.S.C. 207(a)(1). Federal employees exempted from this
provision, however, are compensated for overtime work in accordance
with the (less generous) Federal Employment Pay Act. See 5 U.S.C.
 5542. The OPM regulations were invalidated in 1987, see American
Fed'n of Gov't Employees v. Office of Personnel Management, 821
F.2d 761 (D.C. Cir. 1987), but the "exempt" status of the
plaintiffs as GS-11 or higher pay grade employees was not changed.
 In 1990, the Federal Circuit held that under the Civil
Service Reform Act, Pub. L. No. 95-454, 92 Stat. 1111 (codified as
amended in various sections of 5 U.S.C.) ("CSRA"), the grievance
procedure in a collective bargaining agreement was the exclusive
forum for the resolution of FLSA claims, unless the grievance
procedure explicitly excluded FLSA claims. See Carter v. Gibbs,
909 F.2d 1452, 1458 (Fed. Cir.) (en banc), cert. denied sub nom.Carter v. Goldberg, 498 U.S. 811 (1990). The union, accordingly,
filed a grievance as provided in its collective bargaining
agreement, in September of 1990. The grievance challenged the
Shipyard's classification of the bargaining unit employees as
"exempt" from the overtime pay requirements of the FLSA.
 The union advised its members about the status of the
grievance. In the summer of 1992, the union circulated a bulletin
stating, "This is also a 'last call' for all who have not filed a
grievance and would like to join in. If you do not file at this
time, you will not be considered in this case. Another grievance
will have to be filed at a later date." Plaintiffs did not
participate in this grievance. Plaintiffs assert that the union's
communications led them to believe that their interests would be
protected by the union in the pending grievance, or that they would
be able to file a subsequent grievance.
 In November of 1993, the union and the United States
entered into a settlement agreement, memorialized in a memorandum
of understanding ("MOU"), which resolved the pending grievance. 
The MOU classified the listed grievants as non-exempt and awarded
them back pay for overtime for up to six years. The MOU classified
employees not listed in the grievance as non-exempt from November
12, 1993, thus agreeing that they would get overtime from that date
forward. But the MOU precluded them from receiving, or filing new
grievances for, FLSA overtime back pay for work done prior to
November 12, 1993.
 In a letter dated June 2, 1994, plaintiffs requested
arbitration of their grievances concerning the 1993 MOU under the
collective bargaining agreement between the union and the Shipyard. 
This request for arbitration was denied by the Shipyard in a letter
dated August 23, 1994, on the ground that the issue had been
resolved by the MOU and the plaintiffs did not have authority to
invoke arbitration under the terms of the collective bargaining
agreement between the union and the Shipyard. The plaintiffs
renewed their request in a letter dated September 7, 1994, and this
request was again turned down by the Shipyard in a letter dated
October 28, 1994.
 Plaintiffs had also filed unfair labor practice claims
against the Shipyard and the union with the Federal Labor Relations
Authority ("FLRA") in May of 1994. The FLRA denied the plaintiffs'
appeal on May 31, 1994. According to the FLRA, there was "no
reason to conclude that the grievance settlement . . . violates the
Statute or that either the Shipyard or Local 4 violated the
protected rights of any bargaining unit employees by entering into
that settlement. . . . [N]othing suggests that [the settlement] was
arrived at arbitrarily or discriminatorily or that it was based on
any considerations prohibited by the Statute." 
 Some of the plaintiffs also sought to be included in a
"global settlement" of FLSA issues that was negotiated between the
International Federation of Professional and Technical Engineers
and the Naval Sea Systems Command on a national level. This
process resulted in a partial "global settlement" dated July 20,
1995, and in a final "Global Memorandum of Understanding" dated
December 6 and 7, 1995. These plaintiffs were not included in the
global settlement or the global MOU because their claims were
declared by the Navy to have been settled in the November, 1993
MOU.
 Plaintiffs then filed suit against the union and the
United States in United States District Court for the District of
Maine on March 13, 1996. The plaintiffs alleged that each of them
had either filed a grievance based on the settlement of the union's
1990 grievance, filed unfair labor practice claims against the
defendants based on their handling of the 1990 union grievance, or
were "listed grievants" in the 1990 union grievance who were
dropped from the grievance by the union. Plaintiffs sought
declaratory relief establishing that the November 1993 MOU is
illegal and invalid to the extent that it precluded them from
seeking overtime back pay under the FLSA and the Back Pay Act, 5
U.S.C. 5596. Against the United States, the plaintiffs also
sought monetary relief, including overtime back pay with interest,
statutory liquidated damages, and attorney's fees.
 Both the union and the United States moved to dismiss the
complaint under Rules 12(b)(1) and (6) of the Federal Rules of
Civil Procedure. The union contended that the complaint failed to
establish subject matter jurisdiction or to state a claim upon
which relief may be granted. The United States alleged that the
plaintiffs had failed to establish subject matter jurisdiction and
proper venue, and had raised claims that were barred by the
applicable statute of limitations. After the plaintiffs amended
their complaint to allege jurisdiction under 28 U.S.C. 1331, the
United States argued that the court nonetheless did not have
subject matter jurisdiction.
 The district court referred the case to a magistrate. 
The district court adopted the recommended decision of the
magistrate judge and granted the defendants' motions to dismiss. 
The district court decided the motions as motions to dismiss for
failure to state a claim. As to the union, the court held that the
complaint failed to state a claim upon which relief could be
granted because it was tantamount to a claim that the union had
breached its duty of fair representation, and, under the CSRA, the
grievance procedure established by the collective bargaining
agreement is the exclusive route available to plaintiffs to resolve
their FLSA claims. 
 As to the United States, the court found the statute of
limitations to be dispositive. The court held that the two year
statute of limitations imposed by 255(a) of the FLSA barred the
plaintiffs' claims under the FLSA, all of which accrued more than
two years before the action was filed in federal court. The court
concluded that the pendency of administrative proceedings, i.e.,
the grievances, did not toll the FLSA's limitations period.
 II. The Claims Against the Union
 The action against the union was dismissed because the
claim was viewed as a duty of fair representation claim
masquerading in different garb. No duty of fair representation
claim could be sustained in federal court for two reasons.
 The first reason is that the remedy for any breach of the
duty of fair representation lies with the Federal Labor Relations
Authority. See 5 U.S.C. 7118. Congress assigned this task to
that agency as part of the overall scheme in the CSRA. Under the
CSRA, the union is the exclusive representative of bargaining unit
employees. And the union, in turn, owes a duty of fair
representation:
 A labor organization which has been accorded
 exclusive recognition is the exclusive
 representative of the employees in the unit it
 represents and is entitled to act for, and
 negotiate collective bargaining agreements
 covering, all employees in the unit. An
 exclusive representative is responsible for
 representing the interests of all employees in
 the unit it represents without discrimination
 and without regard to labor organization
 membership.
 
 5 U.S.C. 7114(a)(1). A breach of the duty of fair representation
is an "unfair labor practice." See 5 U.S.C. 7116(b)(8). And
unfair labor practices are to be adjudicated by the FLRA.
 The second reason is that, as the Supreme Court has held,
no parallel private cause of action may be implied from the CSRA. 
See Karahalios v. National Fed'n of Fed. Employees, 489 U.S. 527,
533 (1989) ("[N]either the language nor the structure of the [CSRA]
shows any congressional intent to provide a private cause of action
to enforce federal employees unions' duty of fair
representation.").
 Thus, while the duty itself "parallels the fair
representation obligation of a union in the private sector that has
been found implicit in the National Labor Relations Act (NLRA),"
id. at 532, the places to seek remedies for a violation of the duty
of fair representation vary. If the CSRA and a covered federal
employee are involved, as here, recourse is to the FLRA. "There
exists no equivalent to 301 of the Labor Management Relations Act
. . . which permits judicial enforcement of private collective-
bargaining contracts." Id. at 534. "Consequently, district courts
cannot entertain federal employees' fair representation suits." 
Montplaisir v. Leighton, 875 F.2d 1, 5 (1st Cir. 1989) (citation
omitted).
 The enactment of the CSRA "'comprehensively overhauled
the civil service system' . . . creating an elaborate 'new
framework for evaluating adverse personnel actions against federal
employees.'" United States v. Fausto, 484 U.S. 439, 443 (1988)
(quoting Lindahl v. Office of Personnel Management, 470 U.S. 768,
773, 774 (1985)). In some respects, the Act gives federal
employees greater protections than private sector employees. In
other respects, it alters the forum in which claims may be brought
and the procedures used. See Roth v. United States, 952 F.2d 611
(1st Cir. 1991) (CSRA preempts state law claim); Montplaisir, 875
F.2d at 8 (same). At times, federal employees must meet a more
rigorous standard in order to obtain injunctive relief. SeeSampson v. Murray, 415 U.S. 61 (1974) (discussed in DeNovellis v.
Shalala, 135 F.3d 58, 62 (1st Cir. 1998)).
 The plaintiffs do not dispute that this general statement
is indeed the law for duty of fair representation claims, but argue
that they have been misunderstood. First, they say, they are
different from plaintiffs in other cases such as O'Connell v. Hove,
22 F.3d 463 (2d Cir. 1994), because they have actually exhausted
their administrative remedies. Secondly, they say, the CSRA
procedures failed due to violations and misinterpretations of
federal law. More specifically, citing Barrentine v. Arkansas-Best
Freight Sys., Inc., 450 U.S. 728 (1981), they claim the union could
not waive the individual rights of union members under the FLSA to
get overtime back pay.
 In this, it is the plaintiffs who misapprehend the law,
not the district court. We start with the plaintiffs' last
attempted distinction. In Barrentine, a 1981 decision, the Supreme
Court held that a private sector employee could bring a federal
court action alleging a violation of the minimum wage provisions of
the FLSA after having unsuccessfully submitted the same claim to a
grievance committee under the collective bargaining agreement. 
Barrentine was a private sector case, not involving a federal
employee covered by the CSRA, and expressly recognized that the
statutory enforcement scheme granted broad access to the courts,
and "[n]o exhaustion requirement or other procedural barriers are
set up, and no other forum for enforcement of statutory rights is
referred to or created by the statute." 450 U.S. at 740. Here, in
contrast, another forum for enforcement of statutory rights of a
duty of fair representation is contemplated by the statute and no
implied right of action may be inferred from the CSRA.
 The contention that this is just an exhaustion of
administrative remedies case is also misplaced. Karahaliosprevents such an argument. As Karahalios points out, the CSRA at
Title VII:
 provides recourse to the courts only in three
 instances: with specified exceptions, persons
 aggrieved by a final FLRA order may seek
 review in the appropriate court of appeals, 
 7123(a); the FLRA may seek judicial
 enforcement of its orders, 7123(b); and
 temporary injunctive relief is available to
 the FLRA to assist it in the discharge of its
 duties, 7123(d).
 
 489 U.S. at 532. None of those situations exist here. When the
plaintiffs filed their duty of fair representation complaint with
the FLRA, the General Counsel decided not to issue a complaint. 
But "the General Counsel of the FLRA was to have exclusive and
final authority to issue unfair labor practice complaints, and only
those matters mentioned in 7123 were to be judicially
reviewable." Id. at 533 (citation omitted). The matter ends when
the General Counsel of the FLRA decides not to issue a complaint.
 There remains the argument that the strong federal
interest in fair pay for employees found in the FLSA should trump
the administrative scheme in the CSRA where there is a claim
against the union. The Supreme Court has also foreclosed that
argument in United States v. Fausto, 484 U.S. 439 (1988). In
Fausto, the Court held that an employee seeking back wages under
the Back Pay Act, 5 U.S.C. 5596, may not bring an action in the
Court of Federal Claims under the Tucker Act, 28 U.S.C. 1491, in
light of the "comprehensive system" established by the CSRA. 
 We hold here that federal claims under the FLSA against
the union involving overtime pay and the union's duty of fair
representation may not be brought in federal court due to the
comprehensive scheme of the CSRA.
 III. The Claims Against the United States
 The claims against the United States stand on different
footing. It is arguable that there may be jurisdiction under the
Tucker Act or the "Little Tucker Act," 28 U.S.C. 1346(a)(2). If
so, then jurisdiction would lie in the U.S. Court of Federal Claims
and appellate jurisdiction in the Federal Circuit. But plaintiffs
did not purport to rely on the Tucker Act, and have asserted
colorable federal claims, and so, as the government has conceded,
we have jurisdiction to consider this appeal. See Northeast
Erectors Ass'n v. Secretary of Labor, 62 F.3d 37, 39 n.1 (1st Cir.
1995); Chabal v. Reagan, 822 F.2d 349, 355 (3d Cir. 1987).
 The district court, in a thoughtful opinion, dismissed
the action against the United States because the statute of
limitations had run. The United States urges us to affirm on this
ground, but says that if we find that the statute has not run, we
should transfer the case to the Court of Federal Claims and require
plaintiffs to specify the amounts of their claims for Tucker Act
purposes. Because we believe the statute of limitations issue is
dispositive and because we have no wish to prolong this already
aged dispute, we affirm on the grounds that the claim was not
brought within the FLSA's two-year statute of limitations. It
would not be "in the interest of justice" under 28 U.S.C. 1631 to
transfer a case clearly barred by the statute of limitations. We
affirm largely on the basis of the decisions of the district court
judge and the magistrate judge. We add a brief comment to respond
to plaintiffs' argument on appeal that the statute of limitations
was tolled while they exhausted the grievance process.
 The Supreme Court has squarely held in Unexcelled Chem.
Corp. v. United States, 345 U.S. 59 (1953) that the FLSA's statute
of limitations is not subject to tolling on the basis of pending
administrative proceedings. The plaintiffs say, in response, that
Unexcelled predates the enactment of the CSRA and thus could not
have anticipated the required negotiated grievance procedure in the
CSRA. But nothing in the logic of the reasoning in Unexcelled is
undercut by this argument and the Supreme Court has not since
suggested any infirmity in its holding in Unexcelled.
 IV.
 For these reasons, we affirm the dismissal of the action.