**FEDERAL FIREFIGHTERS ASSOCIATION, LOCAL 1, et al., Plaintiffs,**

**v.**

**The UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 88–1022–LFO.**

United States District Court, District of Columbia.

Oct. 11, 1989.

See also, 723 F.Supp. 821.

Patti A. Goldman, Alan B. Morrison, Public Citizen Litigation Group, Anton G. Hajjar, O'Donnell, Schwartz & Anderson, Washington, D.C., for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Sandra M. Schraibman, Marcia K. Sowles, Attys., Dept. of Justice, Civ. Div. (Roslind A. Knapp, Deputy Gen. Counsel, Diane R. Liff, Asst. Gen. Counsel for Litigation, Miguel R. Rovira, Trial Atty., U.S. Dept. of Transp., of counsel), Washington, D.C., for defendants.

Richard J.M. Poulson, Peter W. Tredick, Paul C. Skelly, Hogan & Hartson (Edward S. Faggen, Robert R. Merhige, III, Metropolitan Washington Airports Authority, of

counsel), William T. Coleman, Jr., Donald T. Bliss, Debra A. Valentine, O'Melveny & Myers (Gregory Wolfe, Edward S. Faggen, Metropolitan Washington Airports Authority, of counsel), Washington, D.C., for defendant Metropolitan Washington Airports Authority.

## MEMORANDUM

OBERDORFER, District Judge.

A Memorandum filed March 30, 1989, addressed some of the differences between the parties with respect to the application of the Metropolitan Washington Airports Act ("Transfer Act") and a lease implementing that act. *See* 49 U.S.C.App. §§ 2451–61. That Memorandum and an accompanying Order authorized plaintiffs to amend their complaint to challenge the constitutionality and statutory legality of the composition of a Board of Review which includes several members of Congress and exercises a veto power over actions of the Metropolitan Washington Airports Authority's ("MWAA's") Board of Directors. In addition, plaintiffs move for a summary judgment that numerous provisions of a Labor Code adopted by the Authority are not authorized by the Transfer Act: (1) the establishment of an Employee Relations Council to resolve certain employer-employee disputes; (2) judicial review of the Council's decisions in the courts of Virginia; (3) provisions with respect to certain unfair labor practices; (4) an obligation on the union for so-called fair representation and financial disclosure to members; and (5) a provision precluding union security clauses in any contract. In addition, plaintiffs contend that the "no strike" provision considered in the March 30 Memorandum impinges on First Amendment rights to free speech.

## I.

■ Plaintiffs challenge the constitutionality of the Labor Code because it was submitted to the Authority's Board of Review which includes members of Congress. Involvement of Congressmen, according to plaintiffs, violates separation of powers principles as well as the presentment clause and the requirement that Congress act only by vote of the House and Senate. *See* U.S. Const. art. 1, § 7. Defendants point out, however, that although the Code was presented to the Board of Review, it took no action so that plaintiffs suffered no injury and have no standing to challenge the composition of the Board. Moreover, even if there were a cognizable case or controversy here, the issue of constitutionality has been resolved at the district court level favorably to defendants by Judge Joyce Green's thorough opinion in *Citizens for the Abatement of Aircraft Noise v. MWAA*, 718 F.Supp. 974 (D.D.C.1989).

## II.

■ Section 2454(c)(6)(D) of Title 49, United States Code, requires the MWAA to "continue all collective bargaining rights enjoyed before the date the lease takes effect by employees of the Metropolitan Washington Airports." Section 2456(c)(5) authorizes the MWAA "to make and maintain agreements with employee organizations to the extent that the Federal Aviation Administration is so authorized on October 18, 1986." Section 2457 requires MWAA to make "arrangements to protect the employment interests of employees" for five years, including but not limited to continuity of pre-existing labor agreements, job security, rates of pay, credit for accrued leave, and prescribed life insurance and health benefits. As Senator Sarbanes, a principal sponsor of the Transfer Act, explained, the Act "does not seek to expand [the employees'] rights. It only seeks to assure them." 132 Cong.Rec. 7,147 (1986). *See also id.* (statement of Senator Trible). The Lease executed between the Department of Transportation and MWAA authoritatively interpreted Congress' intent by providing that:

> The Airport Authority shall adopt and maintain an employment code to assure (1) that the Airports Authority and all its transferring Employees, have the same rights and limitations with respect to labor agreements as the Federal Aviation Administration and its Employees enjoyed on October 18, 1986....

Lease of the Metropolitan Washington Airports at art. 14(B) (March 2, 1987). The form and substance of the relevant provisions of the Transfer Act, the legislative history of their enactment and the implementing lease provision evidence Congress' intent that, except where otherwise provided, the employer-employee relations and the apparatus for dispute resolution established by and for the Authority should be a reasonable facsimile of the relationship that obtained and the apparatus in place when the airports were operated by the Federal Aviation Administration.

According to plaintiffs, application of this standard to the Employer Relations Council fails reasonably to replicate the dispute resolutions mechanism provided by the Federal Labor Relations Authority ("FLRA") for plaintiffs when the union members were FAA employees. The FLRA members are appointed by the President, subject to Senate confirmation. Only two of the three members may belong to the same political party. Its decisions are subject to judicial review in federal courts applying federal law. *See* 5 U.S.C. §§ 7104(a), (b), 7123. By contrast, plaintiffs contend, the Council panels are appointed by the General Manager of the Authority and compensated by MWAA; their decisions regarding unfair labor practices are reviewable, not in federal court applying well-developed federal law sympathetic to unions, but in the Virginia courts subject to Virginia law, not notably considerate of employees and unions. *See* MWAA Labor Code at §§ 4(a), 13(e) (February 1, 1989).

An affidavit filed by defendants outlines a commendable exercise of the General Manager's authority in a way that should produce impartial panels of arbitrators. *See* Affidavit of Patricia Steven. The Federal Mediation and Conciliation Service and the American Arbitration Association submitted a total of 75 names. *See id.* at ¶ 2. The Authority sent these lists to all five labor organizations representing MWAA employees. *See id.* at ¶ 3. A meeting of Authority and union representatives reached agreement on 15 names from these lists. *See id.* at ¶¶ 5–7. An MWAA official then selected 9 from the agreed upon list of 15; of these 9, 5 had been originally proposed by the plaintiffs. *See id.* at ¶ 10.

Plaintiffs nevertheless contend that the fact that the Labor Code vests in the MWAA the authority unilaterally to appoint arbitrators leaves the unions at an unfair disadvantage compared to their posture under the FAA regime. It would be different, plaintiffs say, if the Code provided for the selection of each arbitrator by mutual agreement of the parties. Moreover, plaintiffs indicate their willingness to share the cost of the arbitrators' compensation. They also vigorously challenge defendants' contention that the Transfer Act requires invocation of Virginia, as distinguished from federal, courts and law.

It is not necessary or appropriate at this time to resolve the question of whether review of MWAA arbitration awards will lie in federal or Virginia courts (or both) and be governed by federal or Virginia law (or both). The Labor Code merely authorizes a complaining party to petition Virginia courts for enforcement of an award. *See* MWAA Labor Code at § 13(e). It does not and could oust the jurisdiction of a federal court if an action would otherwise lie there either to enforce an award or to vacate one and to invoke the supremacy clause to oust a Virginia court from jurisdiction.[1] The outcome of such a suit must, of course, await its filing. Nevertheless, the risk that Virginia may provide the forum and the controlling law obviously places the plaintiffs in a position different from that which obtained when their grievances were resolved by the FLRA subject to review in federal court under well-established federal law.

More important, plaintiffs are at risk of having disputes resolved, not by a non-partisan panel of public officials, or even by

---

**1.** *See* Federal Arbitration Act, 9 U.S.C. § 1; Railway Labor Act, 45 U.S.C. §§ 157–59; Taft–Hartley Act, § 301, 29 U.S.C. § 185; *see also, e.g., Miller Brewing Co. v. Brewery Workers Local* *Union No. 9,* 739 F.2d 1159, 1162 (1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985).

panels selected by MWAA after it ascertained and honored the wishes of unions, including plaintiffs, but by whatever panel members MWAA might choose over time. An example of a more nearly reasonable replication of the regime which obtained before the transfer would be one which furnished bipartisan panels whose members were selected and compensated by mutual agreement. *See, e.g.,* Rule 12 of the American Arbitration Association. Whatever mechanism the MWAA chooses to adopt, the one in place does not reasonably replicate that which resolved disputes before the transfer. Accordingly, on this issue an accompanying Order will grant plaintiffs' motion for summary judgment, deny the cross-motion of defendants, and direct the parties to submit a proposed order which would provide for a transition process to whatever independent, bipartisan dispute apparatus may be devised.

On all the other issues, plaintiffs have failed to demonstrate that the Labor Code materially changes the employer-employee relationship that existed between plaintiffs and FAA, or the mechanism for resolving disputes. The provisions of the Labor Code requiring plaintiffs to provide fair representation to all employees in an organized unit and to provide members with an annual financial statement clearly parallel requirements imposed by law upon plaintiffs before the transfer. *See* 5 U.S.C. § 7114(a)1; 29 C.F.R. § 258.3; *see also Karahalios v. National Federation of Federal Employees,* — U.S. —, 109 S.Ct. 1282, 1285–86, 103 L.Ed.2d 539 (1989). Similarly, the Labor Code expressly adopts the principles contained in federal law with regard to union security clauses and union unfair labor practices. *Compare* MWAA Labor Code at §§ 3, 12(b) *with* 5 U.S.C. §§ 7102, 7116. Accordingly, defendants prevail on these issues.

Finally, the plaintiffs challenge as overbroad the Labor Code's definition of a prohibited strike. They read the Code as threatening to embrace in that definition pamphletting and other forms of speech protected by the First Amendment. If and when the MWAA should adopt such an interpretation or more clearly threaten to throttle speech in the course of preventing a strike or impose sanctions upon strikers on account of speech, that will be time enough for judicial intervention.

The foregoing considered, the accompanying Order will grant in part and deny in part the cross-motions for summary judgment and require the parties to submit a proposed order which would provide for correction of the dispute resolution provisions of the Labor Code with appropriate transition arrangements to permit continued resolution of disputes pending adoption of a more neutral disputes resolution machinery.

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 11th day of October, 1989, hereby

ORDERED: that plaintiffs' motion for summary judgment is denied in part and granted in part; and it is further

ORDERED: that defendants' motions for summary judgment are denied in part and granted in part; and it is further

ORDERED: that the parties shall on or before October 20, 1989 submit a proposed order or, if they cannot agree, proposed orders, that would provide for correction of the dispute resolution provisions of the Labor Code with appropriate transition arrangements to permit continued resolution of disputes pending adoption of more neutral disputes resolution machinery; and it is further

ORDERED: that any pending request by the Court for further pleadings is vacated.