TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00546-CV






The City of Round Rock, Texas, and Round Rock Fire Chief Larry Hodge, Appellants


v.


Jaime Rodriguez and Round Rock Fire Fighters Association, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT

NO. D-1-GN-09-000370, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N


 Because I believe that the absence of collective-bargaining rights by the Round Rock
Fire Fighters Association (the "Association") forecloses any potential claim to Weingarten rights,
I respectfully dissent from the opinion by the majority. See National Labor Relations Bd.
v. Weingarten, Inc., 420 U.S. 251 (1975). 


Preliminary Concerns

 As mentioned above, I believe that the absence of collective-bargaining rights by the
Association necessitates a conclusion contrary to that reached by the majority. Because that
conclusion would be dispositive in this case, I need not exhaustively detail my opinion regarding the
majority's determinations forming the basis for their ultimate conclusion that Jaime Rodriguez, as
a member of the Association, had the right to request representation by the Association at the
investigatory interview. 

 However, I do note that many of the majority's preliminary determinations seem
potentially problematic and that the majority's decision seems to overlook crucial distinctions
between the case before this Court and Weingarten. For example, I question the applicability of the
mootness doctrine or the exception to that doctrine to this case. In addressing this issue, the majority
seems to have conflated waiver with the exception to mootness. The act that potentially affected the
ability of a court to address the union-representative issue was the waiver signed by Rodriguez in
which he agreed to waive his rights to appeal the determination made by his supervisors. Had
Rodriguez not signed the waiver, the propriety of the denial could have been determined in a
subsequently filed complaint or lawsuit in a manner similar to the way that the denial of
representation is considered in other contexts. Accordingly, the issue that should be determined is
whether that waiver was properly and freely given or whether Rodriguez was improperly coerced
into signing the agreement. If the majority is correct and Rodriguez was entitled to union
representation during the meeting, resolution of the waiver issue could address what effect the denial
of a union representative had on the validity of the waiver. 

 Instead of addressing waiver, the majority contorts the mootness exception to
conclude that the Weingarten issue should be addressed because "the denial of a request for
representation at an investigatory interview . . . is an act of short duration" and is likely to occur
again. See Williams v. Huff, 52 S.W.3d 171, 184 (Tex. 2001) (explaining that exception to mootness
applies only in rarest of circumstances). In other words, the majority effectively ignores the fact that
Rodriguez signed a document agreeing to the suspension imposed by his supervisors and agreeing
to waive his right to appeal that determination. 

 Unquestionably, the denial of representation is an act of short duration because the
act occurs at the moment a supervisor prohibits an employee from having access to a union
representative. Given that this type of denial is likely to be made immediately before an
investigatory interview begins, I agree that it would be nearly impossible to obtain legal review of
the denial before the interview starts. I also agree that there is a reasonable likelihood that the
appellants will deny union representation at future investigatory interviews. However, the issue will
only escape review if employees attending investigatory interviews also voluntarily waive their
appellate rights. If an employee does not sign a waiver or if it is determined that the waiver was
ineffective, the propriety of the denial of a union representative may properly be addressed in a later
proceeding. 

 In addition to side-stepping jurisdictional inquiries, the majority unflinchingly
analogizes the language in section 101.001 of the labor code to the language in a provision of the
National Labor Relations Act (the "Act"). However, there are significant obstacles undermining the 
majority's decision to essentially equate those statutory provisions. For example, the language of
the two statutes is dissimilar. See 29 U.S.C.A. § 157 (1998); Tex. Labor Code Ann. § 101.001 (West
2006). The federal provision reads, in relevant part, as follows: 


Employees shall have the right to self-organization, to form, join, or assist labor
organizations, to bargain collectively through representatives of their own choosing,
and to engage in other concerted activities for the purpose of collective bargaining
or other mutual aid or protection. 



29 U.S.C.A. § 157. The Texas provision, on the other hand, provides, in relevant part, as follows:


All persons engaged in any kind of labor may associate and form trade unions and
other organizations to protect themselves in their personal labor in their respective
employment.



Tex. Labor Code Ann. § 101.001. Even a cursory reading of the two statutes reveals significant
differences in the words used and in the subjects covered. 

 When confronted with similar differences in language between the Act and other
labor statutes, courts have found that those differences render reliance on Weingarten inappropriate. 
For example, in Johnson v. Express One International, the court concluded that railway employees
do not have Weingarten rights because the Railway Labor Act does not contain the "concerted
activities" clause found in the Act. 944 F.2d 247, 252 (5th Cir. 1991). In reaching its conclusion,
the court warned against applying case law regarding the Act to other statutes with language that
"differs substantially" from the language of Act. See id. at 251. 

 In addition to not addressing the dissimilar nature of the language contained in section
101.001, the majority's decision to equate the two statutes also ignores crucial temporal information. 
The Texas statute was not modeled after the Act because the Texas statute was promulgated well
before the federal one. See Act of May 27, 1899, 26th Leg., ch. CLIII, 1899 Tex. Gen. Laws 262,
262 (allowing employees to form unions "for the purpose of protecting themselves in their personal
work, personal labor, and personal service, in their respective pursuits and employments"). 
Moreover, although the Texas statute has been modified since its original enactment, the legislature
has elected not to adopt the language of the Act. See Tex. Labor Code Ann. § 101.001 (containing
current version of union provision). For these reasons, reliance on the language of the Act and cases
interpreting the Act does not seem particularly pertinent to a determination of whether the Texas
statute provides the types of rights at issue in this case. 

 Further, when determining whether the Texas statute applies to Rodriguez, the
majority essentially concludes that because section 101.001 contains the phrase "All persons," the
provision must apply to both public and private-sector employees. The majority reaches this
decision even though the legislature promulgated separate labor-union provisions for public
employees, which afford public employees more limited rights than private-sector employees. See
Tex. Gov't Code Ann. §§ 617.001-.005 (West 2004) (allowing public employees to join labor unions
but prohibiting them from engaging in collective bargaining, strikes, or work stoppages). 
Furthermore, the majority reaches this decision despite the fact that the Weingarten decision did not
apply to public employees. See Karahalios v. Federal Employees, 489 U.S. 527, 532 (1989);
United States Dep't of Justice, Immigration & Naturalization Serv. v. Federal Labor Relations Auth.,
975 F.2d 218, 221 n.6 (5th Cir. 1992); see also National Aeronautics & Space Admin. v. Federal
Labor Relations Auth., 527 U.S. 229, 231 (1999) (explaining that Congress adopted counterpart to
Act for employees working for federal government). In fact, the federal right to representation for
public employees was created by Congress after the Supreme Court's decision in Weingarten, see
5 U.S.C.A. § 7114(a)(2) (West 2007), but there has been no similar promulgation by the Texas
legislature. In reaching their decision, the majority also ignores the well-established practice of
treating public employees differently than private-sector employees. See Congress of Indust. Org.
v. City of Dallas, 198 S.W.2d 143 (Tex. Civ. App.--Dallas 1946, writ ref'd n.r.e.) (explaining that
status of governmental employees "is radically different" from that of employees "in private business
or industry"); see also Headquarters Nat'l Aeronautics & Space Admin., 50 F.L.R.A. 601, 608 n.5
(1995) (explaining that Congress has recognized that "the right to representation might evolve
differently in the private and Federal sectors, and that Board decisions would not necessarily be
controlling in the Federal sector"). 

 More importantly, the majority has disregarded the different procedural postures
between the present case and Weingarten. In Weingarten, the Supreme Court was confronted with
determining whether an interpretation by the Board was reasonable. See 420 U.S. at 252. 
Specifically, the Board determined that an employee may refuse to submit to an investigative
interview without union representation, and the Court concluded that the Board's interpretation of
the statutes was "at least permissible" and, therefore, upheld it. Id. at 266-67. When upholding the
interpretation, the Court thoroughly discussed the Board's duty to interpret the Act and to adapt their
interpretations in response to "changing patterns of industrial life." Id. at 264-68; see also National
Labor Relations Bd. v. City Disposals Systems, 465 U.S. 822, 829-30, 830 n.7 (1984) (explaining
that construction of Act by Board is entitled to "considerable deference"); Slaughter v. National
Labor Relations Bd., 876 F.2d 11, 13 (3rd Cir. 1989) (noting that review of interpretations by Board
is "highly deferential" because Board is in better position to determine what interpretation will best
promote purpose of facilitating employees' rights to joint action and collective bargaining). 
Accordingly, the Supreme Court did not actually determine whether the Act bestowed the right
asserted by the Board, and in fact, the Court specifically acknowledged that the statute itself might
not require union representation at all. Weingarten, 420 U.S. at 266-67; see Slaughter, 876 F.2d at
13 n.4 (stating that holding in Weingarten only stated that Board's construction was permissible,
not mandatory). 

 Unlike the Weingarten case, there has been no construction by an agency charged
with interpreting and enforcing the various labor code provisions at issue. Accordingly, we are not
asked to determine whether an interpretation is a permissible construction of section 101.001;
instead, we are asked to determine as a matter of law whether the actual language of section 101.001
bestows the representational rights asserted in this case. Given the absence of any language in the
statute pertaining to rights to union representation, I fail to see how the majority can conclude that
those rights are mandated by section 101.001. 

 Finally, the majority fails to address the fact that decisions regarding when and under
what circumstances employees should have access to union representatives necessarily involve
important public-policy considerations. As noted by the Board, there have been significant changes
in the nature of the relationship between employers and employees since Weingarten that have led
to "a rise in the need for investigatory interviews." See IBM Corp., 341 N.L.R.B. 1288, 1291 (2004)
(listing changes in workplace due to new security concerns "raised by terrorist attacks on our
country," workplace violence, corporate abuse, and harassment by co-workers). Resolution of those
public-policy issues should be left to the body of government specifically designed to address those
types of issues. 


Collective Bargaining

 Having highlighted potential problems with the opinion by the majority, I now turn
to what is, in my estimation, the fundamental flaw in the majority's analysis: the conclusion that
section 101.001 of the labor code bestows Weingarten rights on employees belonging to a labor
union regardless of whether the union has the authority to engage in collective bargaining. Even
assuming that section 101.001 could be read as bestowing Weingarten rights on employees, I believe
that the absence of the right to collectively bargain by the Association would foreclose their
application to this case. 

 Perhaps the greatest support for the proposition that collective bargaining is a
necessary prerequisite can be found in the Weingarten opinion itself. That case involved a labor
union with the authority to engage in collective bargaining on behalf of its members. Weingarten,
420 U.S. at 254. Before the case was appealed to the Supreme Court, the Board construed the Act
as creating a "right in an employee to refuse to submit without union representation to an interview
which he reasonably fears may result in his discipline." Id. at 256. 

 In upholding the Board's interpretation of the governing statutory scheme, the
Supreme Court relied heavily on the fact that the union had the right to collectively bargain. First,
the Court noted that the statutory language at issue specified that employees "'shall have the right
. . . to engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid
or protection.'" See id. at 253 n.2 (quoting 29 U.S.C.A. § 157 (emphasis added)). When
determining whether the Board's interpretation of the statute was permissible, the Supreme Court
stated that allowing representation for employees belonging to labor unions with collective-bargaining powers serves the interests of the "entire bargaining unit by exercising vigilance to make
certain that the employer does not initiate or continue a practice of imposing punishment unjustly." 
Id. at 260-61 (emphasis added). The Court also explained that the presence of the representative
would be an assurance "to other employees in the bargaining unit" and made reference to benefits
to "the entire bargaining unit" accorded by the presence of a union representative. Id. at 261, 261
n.6 (emphases added). Finally, the Court noted that the Board's interpretation is consistent with
"actual industry practice" because "[m]any important collective-bargaining agreements" include
provisions allowing employees union representation at "investigatory interviews." Id. at 267
(emphasis added). 

 Several years later, the Board also indicated that the right by employees to collectively
bargain with their employers was a foundational element to the imposition of Weingarten rights. See
IBM Corp., 341 N.L.R.B. 1288. In that case, a nonunionized employee requested the presence of
a co-worker during an investigational interview, and the Board ultimately determined that
Weingarten rights do "not extend to a workplace where, as here, the employees are not represented
by a union." Id. at 1288; see id. at 1291. Although the case did not involve a union without
collective-bargaining powers like the one in the present case, the Board articulated that the lack of
collective-bargaining authority was a crucial factor in its analysis. For example, when discussing
prior cases dealing with the issue presented in IBM, the Board noted that a representative who is a
fellow employee "has no obligation to represent the entire work force as does a union
representative." Id. at 1291. Further, when describing the basis for their determination, the first
reason listed by the Board was the fact that "Coworkers do not represent the interests of the entire
work force." Id. After discussing the importance that the Court in Weingarten placed on collective
bargaining, the Board noted that representatives designated by collective-bargaining agreements act
on and represent "the entire unit" but that a co-worker could not represent the entire work force
because there is no "bargaining unit with common interests defined by a collective-bargaining
agreement." Id. at 1291. Finally, the Board explained that the presence during an informal
investigation of a representative from a union with collective-bargaining rights helps level the
"playing field" between the employee and an employer because the "representative has the full
collective force of the bargaining unit behind him." Id. at 1292. 

 The issue of Weingarten rights in a non-union context was also addressed by a federal 
appellate court several years before the IBM decision, and that court also relied heavily on the
absence of a collective-bargaining agreement in its analysis. See Slaughter, 876 F.2d 11. In
Slaughter, the employee refused to attend a meeting with his supervisors unless he was allowed to
ask a fellow employee to attend the meeting as well. Id. at 12. Ultimately, the Board determined
that "absent an exclusive collective bargaining representative, an employer may discipline an
employee who conditions his willingness to discuss potential disciplinary matters on the
presence of a fellow employee of his choosing," and the court upheld that interpretation. Id. at 13
(emphasis added). 

 The primacy of a collective-bargaining agreement when determining the types of
rights employees possess was also extensively discussed by the Supreme Court in a case decided
after Weingarten. See City Disposal, 465 U.S. at 824. The employee in City Disposal belonged to
a union that had a collective-bargaining agreement with his employer. Id. Under the agreement, the
employer was prohibited from requiring its employees to operate unsafe vehicles. Id. at 824-25. The
employee refused to drive what he considered an unsafe truck, and the Board concluded that the
employee's assertion of his right under the agreement to not have to drive unsafe trucks constituted
"concerted activity" under the provision of the Act authorizing employees to engage in "concerted
activities for the purpose of collective bargaining or other mutual aid or protection." Id. at 825; see
29 U.S.C.A. § 157. 

 In upholding the Board's interpretation, the Court noted that an employee's
invocation of a right guaranteed under a collective-bargaining agreement "affects all the employees
that are covered by the collective-bargaining agreement." City Disposal, 465 U.S. at 830. Further,
the Court explained that the "generalized effect" on all employees to the agreement "can be sufficient
to bring the actions of an individual employee within the 'mutual aid or protection' standard,
regardless of whether the employee has his own interests most immediately in mind." Id. Stated
differently, the Court explained that "when an employee invokes a right grounded in the collective-bargaining agreement, he does not stand alone. Instead, he brings to bear on his employer the power
and resolve of all his fellow employees." Id. at 832. For these reasons, the Court determined that
a single employee's invocation of a right under a collective-bargaining agreement is "a concerted
activity in a very real sense." Id. 

 In light of the preceding, I would hold that even assuming that Weingarten rights have
any applicability in Texas law, Weingarten rights are not available to employees who do not belong
to a union with collective-bargaining rights. Accordingly, I would conclude that the district court
erred when it determined that the appellants violated section 101.001 and, therefore, sustain the
appellants' second issue. For those same reasons, I would also conclude that the district court abused
its discretion when it permanently enjoined the appellants from denying the Association's members
the right to representation "at investigatory interviews they reasonably believe might result in
discipline." Accordingly, I would sustain the appellant's seventh issue on appeal. Because I would
sustain the appellant's first and third issues, I would not reach the issue of whether the district court
erred by imposing contingent appellate attorney's fees on the appellants if they did not prevail on
appeal. 


 __________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Filed: July 21, 2010