# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00546-CV

**The City of Round Rock, Texas, and Round Rock Fire Chief Larry Hodge, Appellants**

**v.**

**Jaime Rodriguez and Round Rock Fire Fighters Association, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-GN-09-000370, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

## D I S S E N T I N G   O P I N I O N

Because I believe that the absence of collective-bargaining rights by the Round Rock Fire Fighters Association (the "Association") forecloses any potential claim to *Weingarten* rights, I respectfully dissent from the opinion by the majority. *See National Labor Relations Bd. v. Weingarten, Inc.*, 420 U.S. 251 (1975).

**Preliminary Concerns**

As mentioned above, I believe that the absence of collective-bargaining rights by the Association necessitates a conclusion contrary to that reached by the majority. Because that conclusion would be dispositive in this case, I need not exhaustively detail my opinion regarding the majority's determinations forming the basis for their ultimate conclusion that Jaime Rodriguez, as a member of the Association, had the right to request representation by the Association at the investigatory interview.

However, I do note that many of the majority's preliminary determinations seem potentially problematic and that the majority's decision seems to overlook crucial distinctions between the case before this Court and *Weingarten*. For example, I question the applicability of the mootness doctrine or the exception to that doctrine to this case. In addressing this issue, the majority seems to have conflated waiver with the exception to mootness. The act that potentially affected the ability of a court to address the union-representative issue was the waiver signed by Rodriguez in which he agreed to waive his rights to appeal the determination made by his supervisors. Had Rodriguez not signed the waiver, the propriety of the denial could have been determined in a subsequently filed complaint or lawsuit in a manner similar to the way that the denial of representation is considered in other contexts. Accordingly, the issue that should be determined is whether that waiver was properly and freely given or whether Rodriguez was improperly coerced into signing the agreement. If the majority is correct and Rodriguez was entitled to union representation during the meeting, resolution of the waiver issue could address what effect the denial of a union representative had on the validity of the waiver.

Instead of addressing waiver, the majority contorts the mootness exception to conclude that the *Weingarten* issue should be addressed because "the denial of a request for representation at an investigatory interview . . . is an act of short duration" and is likely to occur again. *See Williams v. Huff*, 52 S.W.3d 171, 184 (Tex. 2001) (explaining that exception to mootness applies only in rarest of circumstances). In other words, the majority effectively ignores the fact that Rodriguez signed a document agreeing to the suspension imposed by his supervisors and agreeing to waive his right to appeal that determination.

Unquestionably, the denial of representation is an act of short duration because the act occurs at the moment a supervisor prohibits an employee from having access to a union representative. Given that this type of denial is likely to be made immediately before an investigatory interview begins, I agree that it would be nearly impossible to obtain legal review of the denial before the interview starts. I also agree that there is a reasonable likelihood that the appellants will deny union representation at future investigatory interviews. However, the issue will only escape review if employees attending investigatory interviews also voluntarily waive their appellate rights. If an employee does not sign a waiver or if it is determined that the waiver was ineffective, the propriety of the denial of a union representative may properly be addressed in a later proceeding.

In addition to side-stepping jurisdictional inquiries, the majority unflinchingly analogizes the language in section 101.001 of the labor code to the language in a provision of the National Labor Relations Act (the "Act"). However, there are significant obstacles undermining the majority's decision to essentially equate those statutory provisions. For example, the language of the two statutes is dissimilar. *See* 29 U.S.C.A. § 157 (1998); Tex. Labor Code Ann. § 101.001 (West 2006). The federal provision reads, in relevant part, as follows:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

29 U.S.C.A. § 157. The Texas provision, on the other hand, provides, in relevant part, as follows:

> All persons engaged in any kind of labor may associate and form trade unions and other organizations to protect themselves in their personal labor in their respective employment.

Tex. Labor Code Ann. § 101.001. Even a cursory reading of the two statutes reveals significant differences in the words used and in the subjects covered.

When confronted with similar differences in language between the Act and other labor statutes, courts have found that those differences render reliance on *Weingarten* inappropriate. For example, in *Johnson v. Express One International*, the court concluded that railway employees do not have *Weingarten* rights because the Railway Labor Act does not contain the "concerted activities" clause found in the Act. 944 F.2d 247, 252 (5th Cir. 1991). In reaching its conclusion, the court warned against applying case law regarding the Act to other statutes with language that "differs substantially" from the language of Act. *See id.* at 251.

In addition to not addressing the dissimilar nature of the language contained in section 101.001, the majority's decision to equate the two statutes also ignores crucial temporal information. The Texas statute was not modeled after the Act because the Texas statute was promulgated well before the federal one. *See* Act of May 27, 1899, 26th Leg., ch. CLIII, 1899 Tex. Gen. Laws 262, 262 (allowing employees to form unions "for the purpose of protecting themselves in their personal work, personal labor, and personal service, in their respective pursuits and employments"). Moreover, although the Texas statute has been modified since its original enactment, the legislature has elected not to adopt the language of the Act. *See* Tex. Labor Code Ann. § 101.001 (containing current version of union provision). For these reasons, reliance on the language of the Act and cases

4

interpreting the Act does not seem particularly pertinent to a determination of whether the Texas statute provides the types of rights at issue in this case.

Further, when determining whether the Texas statute applies to Rodriguez, the majority essentially concludes that because section 101.001 contains the phrase "All persons," the provision must apply to both public and private-sector employees. The majority reaches this decision even though the legislature promulgated separate labor-union provisions for public employees, which afford public employees more limited rights than private-sector employees. *See* Tex. Gov't Code Ann. §§ 617.001-.005 (West 2004) (allowing public employees to join labor unions but prohibiting them from engaging in collective bargaining, strikes, or work stoppages). Furthermore, the majority reaches this decision despite the fact that the *Weingarten* decision did not apply to public employees. *See Karahalios v. Federal Employees*, 489 U.S. 527, 532 (1989); *United States Dep't of Justice, Immigration & Naturalization Serv. v. Federal Labor Relations Auth.*, 975 F.2d 218, 221 n.6 (5th Cir. 1992); *see also National Aeronautics & Space Admin. v. Federal Labor Relations Auth.*, 527 U.S. 229, 231 (1999) (explaining that Congress adopted counterpart to Act for employees working for federal government). In fact, the federal right to representation for public employees was created by Congress after the Supreme Court's decision in *Weingarten*, *see* 5 U.S.C.A. § 7114(a)(2) (West 2007), but there has been no similar promulgation by the Texas legislature. In reaching their decision, the majority also ignores the well-established practice of treating public employees differently than private-sector employees. *See Congress of Indust. Org. v. City of Dallas*, 198 S.W.2d 143 (Tex. Civ. App.—Dallas 1946, writ ref'd n.r.e.) (explaining that status of governmental employees "is radically different" from that of employees "in private business

5

or industry"); *see also Headquarters Nat'l Aeronautics & Space Admin.*, 50 F.L.R.A. 601, 608 n.5 (1995) (explaining that Congress has recognized that "the right to representation might evolve differently in the private and Federal sectors, and that Board decisions would not necessarily be controlling in the Federal sector").

More importantly, the majority has disregarded the different procedural postures between the present case and *Weingarten*. In *Weingarten*, the Supreme Court was confronted with determining whether an interpretation by the Board was reasonable. *See* 420 U.S. at 252. Specifically, the Board determined that an employee may refuse to submit to an investigative interview without union representation, and the Court concluded that the Board's interpretation of the statutes was "at least permissible" and, therefore, upheld it. *Id.* at 266-67. When upholding the interpretation, the Court thoroughly discussed the Board's duty to interpret the Act and to adapt their interpretations in response to "changing patterns of industrial life." *Id.* at 264-68; *see also National Labor Relations Bd. v. City Disposals Systems*, 465 U.S. 822, 829-30, 830 n.7 (1984) (explaining that construction of Act by Board is entitled to "considerable deference"); *Slaughter v. National Labor Relations Bd.*, 876 F.2d 11, 13 (3rd Cir. 1989) (noting that review of interpretations by Board is "highly deferential" because Board is in better position to determine what interpretation will best promote purpose of facilitating employees' rights to joint action and collective bargaining). Accordingly, the Supreme Court did not actually determine whether the Act bestowed the right asserted by the Board, and in fact, the Court specifically acknowledged that the statute itself might not require union representation at all. *Weingarten*, 420 U.S. at 266-67; *see Slaughter*, 876 F.2d at

6

13 n.4 (stating that holding in *Weingarten* only stated that Board's construction was permissible, not mandatory).

Unlike the *Weingarten* case, there has been no construction by an agency charged with interpreting and enforcing the various labor code provisions at issue. Accordingly, we are not asked to determine whether an interpretation is a permissible construction of section 101.001; instead, we are asked to determine as a matter of law whether the actual language of section 101.001 bestows the representational rights asserted in this case. Given the absence of any language in the statute pertaining to rights to union representation, I fail to see how the majority can conclude that those rights are mandated by section 101.001.

Finally, the majority fails to address the fact that decisions regarding when and under what circumstances employees should have access to union representatives necessarily involve important public-policy considerations. As noted by the Board, there have been significant changes in the nature of the relationship between employers and employees since *Weingarten* that have led to "a rise in the need for investigatory interviews." *See IBM Corp.*, 341 N.L.R.B. 1288, 1291 (2004) (listing changes in workplace due to new security concerns "raised by terrorist attacks on our country," workplace violence, corporate abuse, and harassment by co-workers). Resolution of those public-policy issues should be left to the body of government specifically designed to address those types of issues.

**Collective Bargaining**

Having highlighted potential problems with the opinion by the majority, I now turn to what is, in my estimation, the fundamental flaw in the majority's analysis: the conclusion that

7

section 101.001 of the labor code bestows *Weingarten* rights on employees belonging to a labor union regardless of whether the union has the authority to engage in collective bargaining. Even assuming that section 101.001 could be read as bestowing *Weingarten* rights on employees, I believe that the absence of the right to collectively bargain by the Association would foreclose their application to this case.

Perhaps the greatest support for the proposition that collective bargaining is a necessary prerequisite can be found in the *Weingarten* opinion itself. That case involved a labor union with the authority to engage in collective bargaining on behalf of its members. *Weingarten*, 420 U.S. at 254. Before the case was appealed to the Supreme Court, the Board construed the Act as creating a "right in an employee to refuse to submit without union representation to an interview which he reasonably fears may result in his discipline." *Id.* at 256.

In upholding the Board's interpretation of the governing statutory scheme, the Supreme Court relied heavily on the fact that the union had the right to collectively bargain. First, the Court noted that the statutory language at issue specified that employees "'shall have the right . . . to engage in . . . concerted activities for the purpose of *collective bargaining* or other mutual aid or protection.'" *See id.* at 253 n.2 (quoting 29 U.S.C.A. § 157 (emphasis added)). When determining whether the Board's interpretation of the statute was permissible, the Supreme Court stated that allowing representation for employees belonging to labor unions with collective-bargaining powers serves the interests of the "entire *bargaining unit* by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly." *Id.* at 260-61 (emphasis added). The Court also explained that the presence of the representative

would be an assurance "to other employees in the *bargaining unit*" and made reference to benefits to "the *entire bargaining unit*" accorded by the presence of a union representative. *Id.* at 261, 261 n.6 (emphases added). Finally, the Court noted that the Board's interpretation is consistent with "actual industry practice" because "[m]any important *collective-bargaining* agreements" include provisions allowing employees union representation at "investigatory interviews." *Id.* at 267 (emphasis added).

Several years later, the Board also indicated that the right by employees to collectively bargain with their employers was a foundational element to the imposition of *Weingarten* rights. *See IBM Corp.*, 341 N.L.R.B. 1288. In that case, a nonunionized employee requested the presence of a co-worker during an investigational interview, and the Board ultimately determined that *Weingarten* rights do "not extend to a workplace where, as here, the employees are not represented by a union." *Id.* at 1288; *see id.* at 1291. Although the case did not involve a union without collective-bargaining powers like the one in the present case, the Board articulated that the lack of collective-bargaining authority was a crucial factor in its analysis. For example, when discussing prior cases dealing with the issue presented in *IBM*, the Board noted that a representative who is a fellow employee "has no obligation to represent the entire work force as does a union representative." *Id.* at 1291. Further, when describing the basis for their determination, the first reason listed by the Board was the fact that "*Coworkers do not represent the interests of the entire work force.*" *Id.* After discussing the importance that the Court in *Weingarten* placed on collective bargaining, the Board noted that representatives designated by collective-bargaining agreements act on and represent "the entire unit" but that a co-worker could not represent the entire work force

9

because there is no "bargaining unit with common interests defined by a collective-bargaining agreement." *Id.* at 1291. Finally, the Board explained that the presence during an informal investigation of a representative from a union with collective-bargaining rights helps level the "playing field" between the employee and an employer because the "representative has the full collective force of the bargaining unit behind him." *Id.* at 1292.

The issue of *Weingarten* rights in a non-union context was also addressed by a federal appellate court several years before the *IBM* decision, and that court also relied heavily on the absence of a collective-bargaining agreement in its analysis. *See Slaughter*, 876 F.2d 11. In *Slaughter*, the employee refused to attend a meeting with his supervisors unless he was allowed to ask a fellow employee to attend the meeting as well. *Id.* at 12. Ultimately, the Board determined that "absent an exclusive *collective bargaining* representative, an employer may discipline an employee who conditions his willingness to discuss potential disciplinary matters on the presence of a fellow employee of his choosing," and the court upheld that interpretation. *Id.* at 13 (emphasis added).

The primacy of a collective-bargaining agreement when determining the types of rights employees possess was also extensively discussed by the Supreme Court in a case decided after *Weingarten*. *See City Disposal*, 465 U.S. at 824. The employee in *City Disposal* belonged to a union that had a collective-bargaining agreement with his employer. *Id.* Under the agreement, the employer was prohibited from requiring its employees to operate unsafe vehicles. *Id.* at 824-25. The employee refused to drive what he considered an unsafe truck, and the Board concluded that the employee's assertion of his right under the agreement to not have to drive unsafe trucks constituted

10

"concerted activity" under the provision of the Act authorizing employees to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* at 825; *see* 29 U.S.C.A. § 157.

In upholding the Board's interpretation, the Court noted that an employee's invocation of a right guaranteed under a collective-bargaining agreement "affects all the employees that are covered by the collective-bargaining agreement." *City Disposal*, 465 U.S. at 830. Further, the Court explained that the "generalized effect" on all employees to the agreement "can be sufficient to bring the actions of an individual employee within the 'mutual aid or protection' standard, regardless of whether the employee has his own interests most immediately in mind." *Id.* Stated differently, the Court explained that "when an employee invokes a right grounded in the collective-bargaining agreement, he does not stand alone. Instead, he brings to bear on his employer the power and resolve of all his fellow employees." *Id.* at 832. For these reasons, the Court determined that a single employee's invocation of a right under a collective-bargaining agreement is "a concerted activity in a very real sense." *Id.*

In light of the preceding, I would hold that even assuming that *Weingarten* rights have any applicability in Texas law, *Weingarten* rights are not available to employees who do not belong to a union with collective-bargaining rights. Accordingly, I would conclude that the district court erred when it determined that the appellants violated section 101.001 and, therefore, sustain the appellants' second issue. For those same reasons, I would also conclude that the district court abused its discretion when it permanently enjoined the appellants from denying the Association's members the right to representation "at investigatory interviews they reasonably believe might result in

11

discipline." Accordingly, I would sustain the appellant's seventh issue on appeal. Because I would sustain the appellant's first and third issues, I would not reach the issue of whether the district court erred by imposing contingent appellate attorney's fees on the appellants if they did not prevail on appeal.

                                                     _____

                                                      David Puryear,  Justice

Before Justices Patterson, Puryear and Henson

Filed:   July 21, 2010